R AND R POOL AND PATIO, INC., ET AL. *v.* ZONING
BOARD OF APPEALS OF THE TOWN OF RIDGEFIELD
(AC 19234)

Schaller, Spear and Zarella, Js.

Argued May 10—officially released September 26, 2000

*Robert A. Fuller*, with whom was *Raymond F. Ross*, for the appellants (plaintiffs).

*J. Allen Kerr, Jr.*, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiffs, R & R Pool & Patio, Inc.,[1] Mitchell Ross, David Ross and Philip Ross,[2] appeal from the judgment of the trial court dismissing their appeal from the decision of the defendant zoning board of appeals of the town of Ridgefield sustaining the Ridgefield zoning enforcement officer's issuance of a cease and desist order against certain retail sales on the plaintiffs' property. On appeal, the plaintiffs claim that the trial court improperly (1) failed to conclude that they were denied due process of law by the zoning enforcement officer and the defendant, (2) failed to sustain their appeal when the cease and desist order was illegal, unauthorized and an abuse of discretion, (3) failed to determine that the court's decision in a companion site plan case made the plaintiffs' subsequent site plan application unnecessary and moot, (4) concluded that the defendant's decision was adequately

---

[1] R & R Pool and Home, Inc., is the predecessor to the plaintiff in this appeal, R & R Pool & Patio, Inc. For clarity, we hereafter refer to both R & R Pool & Home, Inc., and R & R Pool & Patio, Inc., as R & R Pool.

[2] The individual plaintiffs are the principals of the plaintiff R & R Pool.

supported by the record, (5) failed to consider whether the defendant's assigned grounds for sustaining the cease and desist order were pertinent to the considerations that the defendant and the court were required to apply and (6) failed to conclude that the defendant's decision was unreasonable, arbitrary and illegal. The plaintiffs also claim that the court's decision in the companion site plan case precluded the defendant under the doctrines of collateral estoppel and res judicata from claiming that the plaintiffs were violating the terms of the variance. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiffs own property located at 975 Ethan Allen Highway in Ridgefield (property). The property is located in a B-2 zone in which retail uses are not permitted under the Ridgefield zoning regulations. In July, 1990, a tenant of the property at the time, Richard Amatulli, doing business as Classics of Ridgefield, obtained site plan approval to conduct a wholesale oriental rug operation on the property, a permitted use in the zone. On November 5, 1990, the defendant granted Amatulli's application for a variance to conduct retail sales on the property (Amatulli variance). The defendant limited the variance with the following language: "This action permits wholesale and retail sales to be conducted from the [property], unrestricted as to type of customer or hours of operation, but restricted as to the products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art."

In 1993, the then owners of the property, Diane Green, Alvin G. Farans and Neil Farans, applied for a variance to remove the restrictions and to allow full retail use of the property. The application was denied by the defendant on June 21, 1993, and no appeal was taken therefrom.

On July 2, 1993, the owners, through their attorney, Melvin J. Silverman, and on behalf of their new tenant, R & R Pool, filed an application for site plan approval with the Ridgefield planning director proposing the use of the property for "warehouse, office and retail sale of fine outdoor furniture." In a letter, which was part of the application, Silverman stated that the owners wanted to "lease the premises to a seller of fine furniture [R & R Pool], albeit of the type which is used generally out of doors." By letter dated September 24, 1993, the planning director informed Silverman that the application was denied and stated three reasons for such denial: "(1) The business you are planning to operate, with the merchandise you are planning to sell, is not the 'fine furniture' contemplated by the Zoning Board of Appeals in its decision on Nov. 5, 1990, in appeal no. 90-099 [the Amatulli variance]; (2) the business you are proposing to operate, with the merchandise you are proposing to sell, was specifically denied a variance to do so by the Zoning Board of Appeals at its June 21, 1993 meeting of appeal no. 93-014 . . . and (3) retail sales is not a permitted use in a B-2 Zone." The owners and R & R Pool appealed to the defendant (site plan case), and the defendant sustained the planning director's decision by way of a memorandum of decision dated February 14, 1994.

The memorandum of decision contained several reasons for the denial. The reasons relevant to this appeal follow. "The Planning Director was correct in his determination that the proposed use for the premises was not in accordance with the variance previously granted [the Amatulli variance].

"The variance in question was granted in order to allow the use of the property for the sale of oriental rugs and fine furniture. A variance was needed because

retail sales are not allowed in the zone in question
. . . .

\* \* \*

"While 'fine furniture' was not specifically described, the variance would be read in its entirety as having an inherent unity of decision. The applicant for that variance presented his request as a unitary operation with the sale of furniture as an adjunct to the sale of oriental rugs and of the same quality as would often involve the services of an interior decorator. The appellant in the matter now before the board seeks to have the meaning of the term 'fine furniture' used to include mass produced, outdoor furniture, arguing that it is in fact 'fine furniture.' This is not the kind of product that was presented to the board when the variance was requested, and it is not the kind of product that was considered by the board when the variance was granted.

"The kinds of product that were considered were ones that, like oriental rugs, are not stock items, are made by hand, and if they do not deteriorate physically, are expected to appreciate in value with the passage of time. Outdoor furniture simply does not fit this definition."

On February 24, 1994, the owners and R & R Pool appealed to the Superior Court alleging that the defendant's decision was arbitrary, illegal and an abuse of discretion. The court dismissed the action for lack of standing on the ground that R & R Pool was not the applicant for the site plan approval. The owners and R & R Pool appealed to this court following our grant of certification.[3] In *R & R Pool & Home, Inc.* v. *Zoning Board of Appeals*, 43 Conn. App. 563, 574, 684 A.2d 1207 (1996), this court reversed the trial court as to

[3] While the site plan case was pending, the owners executed and delivered a warranty deed conveying title to the property to the plaintiffs.

its determination regarding standing and remanded the case for a determination of the merits. On remand, the court, *Stodolink, J.*, sustained the appeal of the owners and R & R Pool.[4] In so doing, the court found, inter alia, that the record contained "no factual evidence to support the board's conclusion that the . . . furniture is not the 'fine furniture' contemplated by the [Amatulli] variance."

During the pendency of the site plan case in Superior Court, the plaintiffs, on July 27, 1995, applied to the planning director for site plan approval for the "retail and wholesale sales of oriental rugs, fine furniture and art." An accompanying statement of proposed use explained that "[t]he property will be used in accordance with the [Amatulli variance]" and that the furniture to be sold would be "of good quality and the higher-end products. It will be the type of quality of fine furniture which is sold in the better furniture stores in the United States. None of the furniture will be of the plastic type which is generally found in discount stores."

Pursuant to the planning director's request for clarification of the use, Raymond Ross, the attorney for the plaintiffs, by letter dated August 15, 1995, stated that "R & R [Pool] will have the same limited retail sales of 'oriental rugs, fine furniture and art' which were previously sold by [Amatulli] under the terms of the [Amatulli] variance. The furniture will be of similar kind and nature to that which was sold by [Amatulli] and falls within the terms of the variance. The products will be of the high-end quality, well styled and upscale products which were previously sold. The products will be customarily used by consumers in such rooms of a home as a den or a dining room. The sale of these furniture items are often made with the assistance of

---

[4] On April 6, 1999, we granted the plaintiffs' motion to take judicial notice of that case in this appeal.

an interior decorator or designer. . . . There will be no plastic furniture, no mass produced assembly line type of furniture, and no athletic equipment such as swingsets."

On August 23, 1995, the planning director issued site plan approval to the plaintiffs subject to the condition that "the limited retail sales will be exactly as permitted and described in the grant of [the Amatulli variance] and further defined in [the defendant's February 14, 1994 memorandum of decision sustaining the planning director's denial of the application for site plan approval in the site plan case]."

In September, 1995, the plaintiffs began retail sales of furniture on the property. On December 29, 1995, the Ridgefield zoning enforcement officer issued a cease and desist order to the plaintiffs ordering that they remedy or discontinue (1) conducting retail sales in a B-2 zone, (2) retail sales not allowed under the Amatulli variance and (3) retail sales not presented during the site plan process and sales that specifically violate the conditions of the plaintiffs' site plan approval.

On January 5, 1996, the plaintiffs appealed the cease and desist order to the defendant. On April 29, 1996, after a hearing, the defendant sustained the decision of the zoning enforcement officer to issue the cease and desist order. The relevant portions of the defendant's memorandum of decision follow. "The applicant applied for Site Plan Approval for one use, and after receiving it, he put the property to another use. . . . Much has been made of the words 'fine furniture,' but such analysis by the applicant is based on wrenching the words from the context in which they were originally used. When the decision [on the Amatulli variance] was made in November, 1990 . . . the phrase 'oriental rugs, fine furniture and art' was used because it had a

specific meaning when taken as a whole. The type of merchandise offered for sale at this location is to be hand crafted, one-of-a-kind, and expected to appreciate in value over the years. The outdoor furniture . . . offered for sale at [the property] does not meet the aforementioned criteria. . . . [T]he variance as it now exists was never intended to support the use of the property for the sale of 'fine furniture' as its primary use.

"The sole purpose for which the property can be used at retail is the sale of 'oriental rugs, fine furniture and art' when such use is an adjunct to the use of the property as a wholesale location. There is no question that the property had had a number of uses over the years, but there has never been a variance in place that would allow the use of the property as a retail store when such use is not as [an] accessory and part-time use to a wholesale operation."

On May 2, 1996, the plaintiffs appealed to the Superior Court from the decision of the defendant sustaining the zoning enforcement officer's cease and desist order. The court, *Stodolink, J.*, heard the appeal contemporaneously with the appeal in the site plan case. As we have set forth, the court sustained the plaintiffs' appeal in the site plan case. In a memorandum of decision dated on the same day as the memorandum of decision in the site plan case, the court dismissed the plaintiffs' appeal from the defendant's decision sustaining the zoning enforcement officer's issuance of the cease and desist order.

The plaintiffs argued to the court that the defendant's decision was arbitrary and illegal in that (1) the Amatulli variance runs with the land and the defendant may not modify it, (2) the term "fine furniture" is vague and involves a matter of personal taste, (3) the plaintiffs were denied substantive due process because they were not informed which items were not "fine furniture" and

(4) the defendant's decision does not coincide with its discussion on the matter. The court noted that the defendant cited three reasons for its decision, that its standard of review is whether the defendant's denial of the plaintiffs' appeal is reasonably supported by the record and that if the record reasonably supports any of the reasons, then the court must dismiss the plaintiffs' appeal. The court concluded that the defendant's first reason, that the plaintiffs "applied for site plan approval for one use, and after receiving it, [they] put the property to another use," was reasonably supported by the record.

The court cited the "assurance" made by Ross during the application process that there would "be no plastic furniture, no mass produced assembly line type of furniture, and no athletic equipment such as swingsets" sold on the property. In light of this "assurance," the court also noted the presence in the record of "nine photographs of chairs and other furniture that appear to be 'mass produced assembly line furniture.' " The court concluded that the defendant's first reason was reasonably supported by the record and dismissed the plaintiffs' appeal. On January 13, 1999, this court granted the plaintiffs' petition for certification to appeal and this appeal followed. Additional facts will be set forth where necessary.

We begin by examining the court's decision in the site plan case to determine how it bears on the disposition of this appeal. In its memorandum of decision in the site plan case, the court noted that the defendant's fourth reason for denying the plaintiffs' appeal from the denial of their original site plan application was that the plaintiffs' furniture was not the "fine furniture" envisioned by the defendant when it had granted the Amatulli variance.[5] In concluding that the defendant's fourth reason

---

[5] The site plan application stated that R & R Pool would be selling fine furniture, "albeit it of the type which is generally used out of doors."

was arbitrary and unreasonable, the court made the following relevant findings. "The transcript [of the hearing on the Amatulli variance] is twenty-two pages long, but 'fine furniture' was mentioned expressly only once. . . . Virtually all of the discussion focused on Amatulli's oriental rug business." "The record does not demonstrate that the [defendant] offered any definitions, or any ascertainable guidelines or standards, upon which a subsequent owner or lessor of the subject property could have reasonably relied upon when selling furniture from the property." "[T]he [defendant] never defined the term 'fine furniture' when it granted Amatulli the variance. [The court finds that the defendant's] statement that the plaintiffs' furniture was not the 'kind of product that was presented to the [defendant] when the variance was requested, and is not the kind of product that was considered by the [defendant] when the variance was granted,' to be misleading. The record reflects that Amatulli presented nothing pertaining to furniture during his hearing, and that [the defendant] focused almost exclusively on Amatulli's oriental rugs." "The record indicates that the [defendant] relied on its own subjective beliefs in its determination that the plaintiffs' furniture did not comport with the variance." "[T]he record reflects that the town's regulations do not define the term 'fine furniture.' "

We conclude that these findings and the court's conclusion make clear that the court determined that the Amatulli variance could not be construed to limit the kind of furniture sold on the property. The defendant did not appeal from the court's judgment.

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the

decision must have been necessary to the judgment. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . . *Milford* v. *Andresakis*, 52 Conn. App. 454, 460–61, 726 A.2d 1170, cert. denied, 248 Conn. 922, 733 A.2d 845 (1999).

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. . . . *Dowling* v. *Finley Associates, Inc.*, [248 Conn. 364, 374, 727 A.2d 1245 (1999)]. . . . *Pitchell* v. *Williams*, 55 Conn. App. 571, 577–78, 739 A.2d 726 (1999).

"The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 460–61, 736 A.2d 811 (1999). Collateral estoppel . . . presents a question of law that we review de novo. *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 596, 726 A.2d 502 (1999)." (Internal quotation marks omitted.) *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 706–707, 746 A.2d 184, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000).

We conclude that the court's determination with respect to the scope of the term "fine furniture" as it appears on the Amatulli variance is to be given preclusive effect in this action and, as such, directs our review of the court's contemporaneous decision concerning the zoning enforcement officer's issuance of the cease and desist order. Each of the elements of collateral estoppel is satisfied here. The issue of what constitutes "fine furniture" was part and parcel of both actions. The record reveals that the plaintiff and the defendant were both parties to the site plan case. The defendant had the opportunity to litigate the issue regarding "fine furniture" before the Superior Court, a court of competent jurisdiction, and that the court's judgment is now final. Finally, as is shown by the court's comprehensive memorandum of decision, the court's decision in the site plan case regarding the issue of "fine furniture" was necessary to its judgment.

The defendant's failure to appeal from the judgment in the site plan case compels the result that in this appeal, "fine furniture," as it appears in the Amatulli variance, does not mean something "finer" than ordinary furniture. It light of this, we turn to our review of the decision that is the subject of the present appeal.

"In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Internal quotation marks omitted.) *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 791, 639 A.2d 519 (1994). If "a zoning author-

ity has stated the reasons for its actions, the reviewing court ought to examine the assigned grounds to determine whether they are reasonably supported by the record and pertinent to the considerations the authority was required to apply pursuant to the zoning regulations." *Beit Havurah* v. *Zoning Board of Appeals*, 177 Conn. 440, 444–45, 418 A.2d 82 (1979).

As the court noted, the defendant stated three reasons for sustaining the zoning enforcement officer's issuance of the cease and desist order. We will address each in turn.

The defendant's first stated reason is that the plaintiffs "applied for site plan approval for one use, and after receiving it, [they] put the property to another use." The plaintiffs' site plan application described the intended use as the "[s]ame use as [the] variance granted to [Amatulli]" and, further, "retail and wholesale sales of oriental rugs, fine furniture and art." The planning director granted the application with four conditions, only one being relevant here, which was that "the limited retail sales will be exactly as permitted and described in the [defendant's grant of the Amatulli variance] and further defined in [the defendant's memorandum of decision in the site plan case sustaining the planning director's denial of the site plan application]."

The Amatulli variance allows for the wholesale and retail sales of "oriental rugs, fine furniture and art." The trial court held in the site plan case that the words "fine furniture," as they appear in the Amatulli variance, do not limit the kind of furniture sold on the property, and, therefore, the plaintiffs' sale of furniture on the property is not in derogation of the description contained in the Amatulli variance and cannot be the basis for the cease and desist order. As to the defendant's memorandum of decision in the site plan case, the portion thereof pertaining to the scope of the phrase "fine

furniture" was determined by the Superior Court to be nonlimiting as to the furniture sold. The court's decision was not challenged and has preclusive effect in this appeal. Therefore, the defendant's discussion of "fine furniture" in its memorandum of decision cannot be the basis for the cease and desist order here.

After receiving the site plan application, the planning director requested that Ross clarify the use. Ross responded by letter, stating, inter alia, that "[t]here will be no plastic furniture, no mass produced assembly line type of furniture and no athletic equipment such as swingsets" sold on the property. This language is the gravamen of the defendant's first reason. We hold that these subsequent representations by Ross do not limit the plaintiffs' use of the property. "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning . . . regulations." General Statutes § 8-3 (g). General Statutes § 8-6 (b) provides in relevant part that a "variance . . . shall run with the land . . . ." The plaintiffs were entitled to the rights of the Amatulli variance, the exercise of which they applied for. These rights include the retail sales of furniture. The planning director was required by law to grant the plaintiffs' application insofar as it requested the use of the property consistent with the Amatulli variance, and the postapplication language of Ross cannot limit the rights of the plaintiffs. We, therefore, cannot accept the defendant's first stated reason as having adequate support in the record.

The defendant's second reason is that the "current use of the property does not conform to the [Amatulli variance]." As we have shown, the plaintiffs' use with respect to the retail sale of furniture does conform with the Amatulli variance as it has come to be defined, and the defendant's contrary assertion cannot find support in the record.

The defendant's third and final stated reason attempts to define "fine furniture" and states that the furniture sold, for which the plaintiffs were given the cease and desist order, does not fit its definition. Again, it is the court's definition of fine furniture that guides us here and, on the basis of that definition, the plaintiffs were not acting contrary to their rights under the Amatulli variance in selling the furniture in question. Accordingly, the defendant's third stated reason is improper.

The judgment is reversed and the case is remanded with direction to sustain the plaintiffs' appeal.

In this opinion the other judges concurred.