HAROLD J. DAW ET AL. *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF
WESTPORT ET AL.
(AC 20334)
(AC 20337)

Spear, Mihalakos and Peters, Js.

Argued November 3, 2000—officially released May 1, 2001

*Robert A. Fuller,* for the appellant-appellee (defendant Totney Benson).

*Thomas M. Geisler, Jr.,* for the appellees-appellants (plaintiffs).

*Ira W. Bloom,* for the appellees (named defendant et al.).

*Opinion*

MIHALAKOS, J. This is a consolidated appeal from the judgment of the Superior Court sustaining in part and dismissing in part the plaintiffs' appeal from the decision of the defendant zoning board of appeals of the town of Westport (board).[1] We affirm the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of this appeal. The defendant Totney Benson is the owner of a house and property located at 17 Buena Vista Drive in Westport. The lot

---

[1] Also named as defendants were the town zoning enforcement officer and the variance applicant, Totney Benson.

owned by Benson totals 14,062 square feet or 0.3228 acres and is located within a residence AA zone, which requires a minimum of one acre for a building. This lot became a nonconforming lot when the minimum lot size was increased at some point in the past. The lot is irregular in shape and bounded on three sides by town roads. On the fourth side, the lot abuts the property owned by the plaintiffs, Harold Daw and Meryl Daw.

The house at 17 Buena Vista Drive is a two story frame structure that was built in 1928. Under the current zoning regulations, a thirty foot setback is required on the three sides of the lot that are adjacent to town roads. On the fourth side of the lot, which is adjacent to the plaintiffs' property, a ten foot side yard setback is required. The house is located on the west side of the lot, with a small portion of the structure falling within these setback restrictions.

In 1959, the board granted a variance to a prior owner of the house and property at 17 Buena Vista Drive (1959 variance). This variance allowed the owners to build a two story addition and porch encroaching on the required side and rear yard setbacks. When Benson purchased the house and property in 1979, all of the improvements allowed by the 1959 variance were not in place.

In 1995, Benson applied for a variance to expand the existing house at 17 Buena Vista Drive by building a three story addition. The application sought a variance from the side setback and height zoning regulations. The board granted the application for the variance (1995 variance), but stated no reasons for its decision.

The plaintiffs appealed from the board's decision to the Superior Court. Because the board had stated no reasons for its decision granting the application for the variance, the Superior Court searched the record of

Benson's application for unusual hardship. Finding that no such hardship existed, the court reversed the decision of the board.

While the appeal to the Superior Court was pending but before the court had made its decision, Benson began construction of the three story addition, as allowed by the variance that had been granted by the board. During this construction, structural defects in the foundation and basement walls were discovered in the existing house. After the court's decision dated August 26, 1997, the zoning enforcement officer revoked Benson's zoning permit, and construction on the addition ceased. Benson did not appeal from the decision of the court.

In September, 1997, Benson filed with the board a second application for variances. This application included a request for a variance for the same three story addition that was included in the original 1995 application, as well as a variance to allow repairs to the house's foundation, replacement of basement walls and the construction of certain decks within the building footprint. The board granted the application for the variances (1997 variances). In its decision, the board listed as its reasons for granting Benson's application (1) the buildable area of the lot was small, (2) the shape of the lot was unusual, (3) the proposed improvements were in keeping with the construction in the neighborhood, (4) there were front setback restrictions on three sides of the lot, (5) the existing location of the house, (6) the noise of the rooftop mechanicals was moved away from the required setbacks and the neighbors, (7) there was no adverse impact on neighboring property values, (8) the precedential force of the 1959 variance and (9) the variances in effect at the time of purchase.

The plaintiffs appealed from the board's decision to the Superior Court. The court sustained the appeal in

part, holding that the previous decision of the court, sustaining the plaintiffs' appeal from the board's decision as to the 1995 variance, barred the board under the doctrines of res judicata and collateral estoppel from granting an application for a variance for the same proposed three story addition. The court dismissed the plaintiffs' challenge to the board's decision granting a variance with regard to the replacement of the existing structure's foundation walls and the construction of two decks above the walls, holding that the board was not precluded from granting the variance application as to them because they were not part of the 1995 application and because the board's finding of hardship was supported by substantial evidence in the record.

"When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it. . . . In reviewing the action of the trial court, we have to decide whether it could in logic and in law reach the conclusion that the [board] should be overruled." (Citations omitted; internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission*, 55 Conn. App. 533, 537, 738 A.2d 1157 (1999).

"Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to deter-

mine whether it was unreasonable, arbitrary or illegal." (Citations omitted; internal quotation marks omitted.) Id., 538.

"In situations in which the zoning [board] does state the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations under . . . the zoning regulations. . . . [A] reviewing court cannot substitute its judgment for that of the agency. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial . . . ." (Citations omitted; internal quotation marks omitted.) Id., 539–40.

I

DEFENDANT BENSON'S APPEAL

A

Benson appeals from the portion of the trial court's decision reversing the board's decision to grant her application for a variance for the construction of a three story addition. She first claims that the court improperly concluded that the board was barred under the doctrines of res judicata and collateral estoppel from granting the variance application because it was similar to the 1995 variance application that had been granted by the board and denied on appeal. We disagree.

"Collateral estoppel, like its cousin res judicata, presents a question of law that we review de novo." *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 596, 726 A.2d 502 (1999). "The judicial doctrines of res judicata and collateral estoppel are based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . Stability in judgments grants to parties and

others the certainty in the management of their affairs which results when a controversy is finally laid to rest." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422–23, 752 A.2d 509 (2000).

"Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding." (Internal quotation marks omitted.) *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 60 Conn. App. 82, 91–92, 758 A.2d 462, cert. granted on other grounds, 255 Conn. 902, 762 A.2d 909 (2000).

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 559, 436 A.2d 24 (1980).

"[R]es judicata should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." (Internal quotation marks omitted.) *Isaac* v. *Truck Service, Inc.*, supra, 253 Conn. 422. "If the same cause of action is again sued on, the judgment is a bar

with respect to any claims relating to the cause of action which were actually made *or which might have been made*." (Emphasis added.) *Wade's Dairy, Inc.* v. *Fairfield,* supra, 181 Conn. 559–60.

In 1997, the trial court reversed the decision of the board granting Benson's 1995 variance application for the construction of a three story addition to her home because the board had given no reasons for its decision and because, after a close inspection of the record, it found no undue hardship. Benson did not appeal from that decision, which stands as a final judgment. The issues considered in connection with that application were therefore fully litigated. In 1997, Benson filed a second application with the board for a variance for the same three story addition. Benson went so far as to state before the board that the application was for "the same addition [she had] received approval for in 1995." This variance cannot be granted because it is barred by res judicata and collateral estoppel.

B

Benson's second claim is that the 1959 variance allowed her to build the three story addition. Benson specifically claims that as long as the three story addition was built within the footprint of the 1959 variance, she did not need a variance from the side yard setback or height requirements for the addition. This claim is barred by res judicata because it could have been made in the 1997 appeal from the 1995 application.

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with

respect to any claims relating to the cause of action which were actually made or which might have been made." (Citations omitted; internal quotation marks omitted.) *Orselet* v. *DeMatteo*, 206 Conn. 542, 544, 539 A.2d 95 (1988).

C

Benson's final claim is that General Statutes § 8-2h (a),[2] in conjunction with the 1959 variance, exempts the proposed addition from the current zoning regulations. We disagree.

Benson argues that under the 1959 zoning laws, the 1959 variance allowed her to build an addition, of any height, within the footprint of the unbuilt porch. The three story addition that she sought would have been within that footprint. Benson maintains that § 8-2h (a) prohibits the board from enforcing, as to her, any changes to the zoning regulations made after 1959.

"The current rule in this state is that the validity of a planning and zoning commission's action is to be determined by reference to the zoning laws and regulations in effect at the time that the challenged action was taken." *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 318, 612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992). "The provisions of § 8-2h . . . are directed at situations where an application is filed with a zoning authority that seeks to make use of land in a manner permitted under regulations existing at the time the application is filed. In those circumstances, § 8-2h requires the zoning authority, *acting in*

---

[2] General Statutes § 8-2h (a) provides in relevant part: "An application filed with a . . . zoning board of appeals or agency exercising zoning authority of a town, city or borough which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations or the boundaries of zoning districts of such town, city or borough taking effect after the filing of such application."

*its administrative capacity,* to process the application in accordance with the regulations in effect at the time the application is filed." (Emphasis in original.) *Homart Development Co.* v. *Planning & Zoning Commission,* 26 Conn. App. 212, 218, 600 A.2d 13 (1991). "The plain meaning of § 8-2 only affects nonconforming uses which are, in fact, in existence at the time a new regulation is adopted." *Sherman* v. *Planning & Zoning Board of Appeals,* 13 Conn. App. 699, 707, 539 A.2d 588 (1988).

Section 8-2h does not produce the result sought by Benson. Section 8-2h simply states that if zoning regulations are changed after an application is filed, that application does not have to comply in order to be approved. There is no language in the statute to suggest that § 8-2h exempts the subject property from future zoning changes in perpetuity, as Benson seems to suggest.

The porch was never built in 1959. Therefore, there was no nonconforming use in existence after 1959 when the zoning regulations were changed. Benson cannot escape the zoning regulations through § 8-2h and the 1959 variance.[3]

## II

### THE PLAINTIFFS' APPEAL

### A

The plaintiffs appeal from that portion of the court's decision dismissing their appeal from the decision of the board to grant the variance application pertaining to the replacement of the existing structure's foundation walls and the construction of two decks above the walls. It is their claim that their appeal should have been sustained in toto on the basis of res judicata or collateral estoppel. We disagree.

[3] The board supports Benson's position in this appeal.

As we have discussed previously, collateral estoppel and res judicata present questions of law that we review de novo. See *Linden Condominium Assn., Inc.* v. *McKenna*, supra, 247 Conn. 596. The relitigation of an issue is prohibited when that issue was fully and fairly litigated and decided in a prior proceeding. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 60 Conn. App. 91; see also *Wade's Dairy, Inc.* v. *Fairfield*, supra, 181 Conn. 559–60.

In 1995, Benson applied for a variance for a three story addition to her home that included a grade level garage with a two story addition above it. That variance application was approved by the board. The plaintiffs appealed to the Superior Court from the boards' decision approving the variance. In the time period after the approval of the variance application by the board and before the Superior Court's ruling on the appeal, Benson proceeded with the construction and discovered structural defects in the existing foundation and basement walls of the house. When the Superior Court subsequently reversed the board's decision granting the variance, Benson ceased construction.

In September, 1997, Benson reapplied for a variance. This application requested a variance for the original three story addition with one bay garage beneath and to reconstruct the existing basement walls and decks to prevent sinking. There is no question that the application was, in part, for the same addition as applied for in 1995.

As discussed previously, the board was precluded, under the doctrines of res judicata and collateral estoppel, from granting the variance application as to the addition to the house. The request regarding the basement walls and decks, however, was neither mentioned in the 1995 variance application nor encompassed by it. Because Benson did not discover the defects in the

basement walls until after the granting of the 1995 variance application, it stands to reason that she would not have requested a variance to repair them prior to that discovery. In its memorandum of decision, the court stated that the issue thus was whether there was substantial evidence in the record to justify the board's decision regarding the foundation walls and decks. The court found that in her application to the board, Benson referred to a variance for foundation walls and decks and the reasons why one was justified. The court stated that the board had found Benson's testimony to be credible and that for the court to find otherwise would be to substitute the court's judgment for that of the board. After a review of the record before us, we find no reason to disagree.

B

The plaintiffs next claim that the court improperly affirmed the board's decision granting a variance for a two car garage for reasons other than those specified in the board's decision in violation of Connecticut law. We disagree.

The plaintiffs claim that Benson's 1997 variance application sought approval for the addition of a two car garage. After close inspection of the record and appendices supplied by the parties, we are unable to find any mention of a two car garage in the 1997 variance application or in the actual variance that was granted. What we do find is a request by Benson in the 1997 application for a variance to build a one car garage. That application was granted and referred to a "one stall garage." We find mention of a "grade level garage" in the 1995 application and in the letter from the board to Benson informing her of the approval of the application. There is no indication in either document whether

this grade level garage was for one or two cars.[4] We find no mention of a two car garage in the court's decision. Thus, because the 1997 variance application did not concern a two car garage and because the court did not address that issue in its decision, the plaintiffs' claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The 1997 floor plans show that Benson sought to have what appears to be two separate garage areas beneath her house. From the floor plans and the chronology of events and permits, it appears that the subject garage in both the 1995 and 1997 variances was a one stall garage to be located beneath the proposed addition on the east side of the house. The additional garage appears in the 1997 plans and is located within the existing basement. It is unclear from the drawings whether this garage is one or two bays. It is clear, however, that this garage was not part of the 1995 plans.