[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This record or administrative appeal involves a site plan. The plaintiff; Gerald Gerardi, appeals from a decision by the defendant, the town of Westport Planning and Zoning Commission (commission), denying his application for approval of a site plan. The subject premises are located at 243 Post Road West, in Westport, in the Business Preservation District (BPD).
The plaintiff applied for site plan approval to convert a building used for retail purposes to an undertaking establishment. The application did not seek an enlargement or relocation of the foundation of the existing CT Page 7765 building, and a special permit or exception was not required because the proposed use is permitted in this zone as a matter of right. Section 28.2.1.2(f) of the Westport Zoning Regulations (regulations). Uses in this zone are, however, "subject to site plan approval in accordance with section 43 (of the regulations]."
The defendant commission denied the application in a four to one vote with one abstention. In denying the application, the defendant gave as its reasons an alleged adverse impact on traffic, inadequate parking and lack of a septic permit from the local health department, among other reasons.[1]
The plaintiff appealed to this court pursuant to General Statutes § 8-8, and a hearing was held on February 8, 2001, at which the plaintiff was found to be aggrieved for the purpose of pursuing this appeal. Whether a party is aggrieved depends on a two-part test: "(1) does the allegedly aggrieved party have a specific, personal and legal interest in the subject matter of a decision; and (2) has this interest been specially and injuriously affected by the decision?" Gladysz v.Planning Zoning Commission, 256 Conn. 249, 256, ___ A.2d ___ (2001). The plaintiff is aggrieved because he is the owner of the subject premises.Bossert Corp. v. Norwalk, 157 Conn. 279, 285, 253 A.2d 39 (1968).
The subject of site plans is addressed in General Statutes § 8-3
(g). "The zoning regulations may require that a site plan be filed with the commission . . . to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations." In Westport, section 43.7.5 of the regulations provides that "[a] site plan may be modified or denied only if it fails to comply with the requirements already set forth in the Zoning . . . Regulations in accordance with Section 8-3 subsection (c) of the Connecticut General Statutes."
The issue in this case is whether the plaintiff's application conformed to the Westport Zoning Regulations concerning site plans. "When an agency undertakes consideration of a site plan application, it has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated in the site plan regulations by reference." Borden v. Planning ZoningCommission, 58 Conn. App. 399, 408, 755 A.2d 224, cert. denied,254 Conn. 921, 759 A.2d 1023 (2000). The standard of review by this court is "whether the defendant's denial of the plaintiff's appeal is reasonably supported by the record and that if the record reasonably supports any of the reasons, then the court must dismiss the plaintiff's appeal." R R Pool Patio, Inc. v. Zoning Board of Appeals,60 Conn. App. 82, 90, 758 A.2d 462, cert. granted in part' 255 Conn. 902, CT Page 7766 762 A.2d 909 (2000).
In its briefs, the defendant agrees that: "A site plan can be turned down only if it fails to comply with requirements already set forth in the regulations." The defendant also agreed that: "The courts have disapproved denying site plans based on vague general reasons."
Section 44-5 of the regulations provides that in reviewing a site plan, the commission shall consider "the public health, safety and general welfare." This section also contains certain "general objections,"such as traffic and pedestrian access,[2] and circulation and parking.[3]
The plaintiff claims that none of the reasons stated by the commission for rejecting his application finds support in the Westport Zoning Regulations. In its briefs, the defendant refers only to four of the twelve reasons given by the defendant for rejecting the site plan application, viz., reasons 7, 8, 9 and 6. Although all the reasons have been considered, this memorandum focuses on or addresses those four reasons to determine whether any one of them finds support in the regulations.
Design Requirements for Parking and Traffic
Reason number 7 for rejecting the site plan pertains to section 34-11
of the regulations which provides in pertinent part that: "The general layout and traffic circulation of parking and loading areas shall be designed so as to avoid unsafe conditions, traffic congestion in the streets upon which the area has access and to provide for the safety and adequacy of access. for vehicles and pedestrians using the area according to the following standards." This section then refers to the layout of parking areas and a requirement that curb cuts, maneuvering areas and parking areas, comply with all requirements of various municipal and state agencies.
The plaintiff planned to provide seventeen on-site parking spaces although only ten are required.[4] The commission, however, stated that its members and some of the public who were at the hearing expressed "concerns" about unsafe conditions in the street and adequate access for vehicles using the premises and that "no viable plan to address the concerns was presented" by the plaintiff.[5] Some members of the commission expressed concerns that a large funeral would cause unsafe conditions both on the site and on the street. The defendant, however, does not refer to any specific section of the regulations which requires providing for over-flow parking caused by a use permitted in the zone as a matter of right and without any obligation to obtain a special permit. Moreover, the plaintiff offered a number of specific ways in which any CT Page 7767 over-flow parking problems that did ensue could be ameliorated, which suggestions could in theory be made conditions of approval of the site plan.[6] It should also be noted in this context that the plaintiff estimated that he would have about 25 funerals a year, two or three of which could be considered large.
Health Department Report
The commission referred in reason number 8 of its decision to section44-2.1 of the regulations which provides that an applicant for site plan approval must obtain reports from local agencies such as the health department "where applicable." The commission stated that the applicant did not receive approval of a proposed septic system. A person representing the plaintiff at the public hearing did state at one point that since it would take some time to connect with the sewer that the plaintiff might want to use a septic system in the interim.
The plaintiff obtained conditional permission from the town Water Pollution Control Authority to connect with the private sewer under repair in the street in front of the subject premises. The plaintiff has made it clear in its briefs that it wants to connect with that sewer as soon as it is repaired and available, and in the meantime has no desire or plan to use or install its own septic system. Since there will not be a septic system, there is no need for health department approval, and hence this particular reason cannot be used to deny the site plan application. The plaintiff understands and agreed in his brief that he must wait to use the building until he connects with the sewer after it is repaired and upgraded.
Non-conforming Buffer Zone
The plaintiff's rear lot line is the boundary separating two zones. There has to be a buffer area of 15 feet in the rear of the plaintiff's property between the existing building and the rear lot line, according to section 35-2.4.1 of the regulations. Section 35-2.4.1(a) states that the buffer strip must be "used for no other purpose."
The defendant commission stated as reason number 9 for its disapproval of the site plan that, because the plaintiff proposed to change the "use" of the subject premises from retail to a funeral parlor, a buffer zone of fifteen feet was now required and could not be provided.[7] There is presently an asphalt turnaround for the garage on a portion of the fifteen feet buffer strip. In other words, there is a fifteen foot buffer strip, but in part it is occupied by an existing turnaround, and the defendant indicated that because of the asphalt, the buffer strip was no longer legal or permitted. CT Page 7768
Section 6-2.1 of the regulations pertains to non-conforming buildings and provides that such a building "may not be expanded, extended, relocated or altered" if the degree of non-conformity is increased. In this case, the plaintiff is not expanding, extending or relocating the building in question. The foundation or footprint of the structure is remaining just as it presently exists. The building will be completely remodeled to accommodate a funeral home, but such alteration does not "increase the degree of any non-conformity," in this case, the fifteen foot buffer zone.
The defendant relies on section 6-2.1(f) of the regulations which provides that: "All new construction shall be in accordance with these regulations." The regulations make a distinction between alterations and new construction. An alteration may not increase the degree of non-conformity, whereas new construction must comply with the regulations. The plaintiff does not propose to engage in new construction, and therefore complies with section 6-2.1 of the regulations because he is not increasing the degree of non-conformity. There is nothing in the regulations that state a change in "use" is equivalent to "new construction." The defendant apparently also relies on section 6-1.3 relating to changing non-conforming uses, but this section is inapplicable to funeral homes which are permitted uses in the zone in question as a matter of right, without the necessity of a special permit, and therefore is not a non-conforming use. Thus, reason number 9 for the rejection of the site plan does not find support in the record.
Non-conforming Driveway Grade
Reason number 6 offered by the defendant pertains to the grade of the existing 200 foot driveway and stated that because of the change of "use" from retail to an undertaker's establishment, the driveway must now be brought into compliance with the grade requirements m section 34-11.5 of the regulations. This section provides that the maximum grade is six percent for the first 40 feet and ten percent thereafter. The grade of the driveway is currently non-conforming.
This reason involves the same analysis as did the buffer zone. The plaintiff's site plan does not make the existing grade of the driveway any steeper. The degree of non-conformity is not being increased. Parenthetically, the record indicates that the grade of the driveway is significantly reduced in the proposed site plan by bringing in some fill. In any event, this I particular reason does not afford a basis for denying the site plan application.
In conclusion, none of the reasons offered by the defendant commission CT Page 7769 for its rejection of the plaintiff's application finds adequate support in the record. The site plan complies with the requirements of the Westport Zoning Regulations and, therefore, in the words of section 43.7.5 of these regulations, the defendant is not authorized to deny the plaintiff "s application. The appeal is sustained, and the case is remanded to the defendant commission to approve the site plan, but with the authority to impose reasonable conditions, such as conditioning approval on the plaintiff connecting with the sewer now under repair on the street in front of his property, and such other conditions pertaining to traffic, parking and internal circulation as the defendant commission deems reasonable under the circumstances. This court will retain jurisdiction over this appeal in the event that a dispute arises concerning the propriety of any such restriction.
So Ordered.
Dated at Stamford, Connecticut, this 5th day of June, 2001.