TOTNEY BENSON *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF WESTPORT
(AC 25148)

McLachlan, Harper and Peters, Js.

Argued February 18—officially released May 31, 2005

*Robert A. Fuller*, for the appellant (plaintiff).

*Ira W. Bloom*, for the appellee (defendant).

*Thomas M. Geisler, Jr.*, for the appellees (intervening defendants).

*Opinion*

McLACHLAN, J. This certified zoning appeal concerns whether the plaintiff landowner, Totney Benson, must remove the addition to her home built in 1997 because it sits 3.7 feet over the side setback line. The dispositive issue in this case is what is meant by "the institution of an action to enforce" zoning regulations in General Statutes § 8-13a (a). We conclude that § 8-13a (a) requires the institution of a civil action for an injunction within a three year limitations period and that neither a variance appeal by an abutting landowner nor the issuance of a cease and desist order by a town zoning enforcement officer will suffice. We reverse the judgments of the trial court.

The plaintiff appeals from the judgments of the trial court rejecting her appeals from the cease and desist orders issued by the zoning enforcement officer of the town of Westport requiring that she remove the addition. The plaintiff claims that the defendant, the zoning board of appeals of the town of Westport (board), and the trial court on appeal improperly concluded that the zoning enforcement officer's June, 2001 order was timely. Section 8-13a (a) requires "the institution of an action to enforce" certain zoning regulations within

three years "[w]hen a building is so situated on a lot that it violates" those regulations.

This is the third appeal in this matter and the second to reach this court. See *Daw* v. *Zoning Board of Appeals*, 63 Conn. App. 176, 772 A.2d 755, cert. denied, 256 Conn. 931, 776 A.2d 1145 (2001). In 1995, the plaintiff applied for and was granted a variance to build a three story addition to the house on the subject property. The variance was necessary because the proposed addition did not comply with the town's side setback and height[1] regulations. Abutting landowners Harold J. Daw and Meryl K. Daw, intervening defendants in the present appeals, appealed to the Superior Court when the board granted the variance without stating its reasons. The plaintiff began construction of the addition despite her knowledge that that appeal was pending.[2] Finding no undue hardship to support the granting of the variance, the trial court, in a decision dated August 26, 1997, reversed the decision of the board. The plaintiff ceased construction when the zoning enforcement officer then revoked her zoning permit.

Rather than seek from this court certification to appeal, however, the plaintiff in September, 1997, filed with the board a second application for variances to build the same proposed addition and, furthermore, to complete repairs of previously undiscovered structural damage and the construction of two decks. The board again granted the application and that time gave several reasons for its determination of undue hardship. The

---

[1] The height of the addition is no longer an issue in this case because of subsequent amendments to the Westport zoning regulations and some grading work completed by the plaintiff.

[2] The plaintiff's attorney acknowledged before the board in 1997 that the plaintiff recognized the risk inherent in building the addition during the pendency of an appeal "because if you lose your case you may have to tear it down." Indeed, we have previously called such conduct by a landowner reckless. *Fromer* v. *Two Hundred Post Associates*, 32 Conn. App. 799, 806, 631 A.2d 347 (1993).

Daws appealed once again to the Superior Court. Despite her knowledge that another appeal was pending, the plaintiff resumed construction, and the addition was completed in December, 1997. Certificates of zoning compliance and of occupancy were issued. On September 30, 1999, however, the trial court again sustained the Daws' appeal from the variance to construct the addition. We affirmed the judgment of the trial court in a May 1, 2001 opinion on the grounds of res judicata and collateral estoppel. *Daw* v. *Zoning Board of Appeals*, supra, 63 Conn. App. 176.[3]

The board maintained the position throughout the appeals challenging the variances that they had been properly granted. Following the Supreme Court's order denying certification to appeal from our 2001 decision, however; *Daw* v. *Zoning Board of Appeals*, 256 Conn. 931, 776 A.2d 1145 (2001); the board could no longer maintain that position. The variance to build the addition having been denied finally, the town of Westport sought to enforce its regulations. On June 21, 2001, the zoning enforcement officer voided the previously issued permits and ordered the plaintiff to remove the addition. The plaintiff appealed to the board from that order, and the board, on December 13, 2001, upheld the order with modifications reflecting our opinion allowing repairs and deck construction. See *Daw* v. *Zoning Board of Appeals*, supra, 63 Conn. App. 187. The plaintiff appealed to the Superior Court, and the Daws were allowed to intervene as defendants. Following trial, the court affirmed the order that the addition be removed in a December 8, 2003 memorandum of decision. We granted certification to appeal, and this appeal fol-

---

[3] Repairs to the existing structure and the construction of the proposed decks were allowed because they were not raised in the plaintiff's first application for variances and, therefore, were not barred by collateral estoppel and res judicata. See *Daw* v. *Zoning Board of Appeals*, supra, 63 Conn. App. 185–87.

lowed. The zoning enforcement officer ultimately initiated a civil action to enforce the regulations pursuant to General Statutes § 8-12 in April, 2004. In that action, the zoning enforcement officer sought an injunction ordering the plaintiff to remove the addition, and it apparently is still pending. The plaintiff appeals from the decision of the trial court rejecting her appeals from the board's decision upholding the zoning enforcement officer's cease and desist orders that she remove the addition.

The plaintiff's only claim on appeal is that the court improperly rejected her timeliness defense to the zoning enforcement officer's orders. She argues that under § 8-13a (a), the failure of the board or the Daws to file an action for an injunction to enforce the zoning regulations within three years after completion of construction in December, 1997, rendered the addition a valid, nonconforming structure. As such, she argues that the addition cannot now be ordered removed and is not subject to further enforcement action.

Although we employ a deferential standard of review to the actions of zoning boards of appeals; see, e.g., *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 165, 855 A.2d 1044 (2004); the issue raised here is one of statutory construction. "Issues of statutory construction present questions of law, over which we exercise plenary review. . . . When construing a statute, we first look to its text, as directed by [General Statutes § 1-2z], which provides: 'The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.' When a statute is not plain and unambiguous, we also seek interpretive guidance from

the legislative history of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law principles governing the same general subject matter." (Citation omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005).

We begin by quoting the relevant statutory text. "When a building is so situated on a lot that it violates a zoning regulation of a municipality which prescribes the location of such a building in relation to the boundaries of the lot . . . and when such building has been so situated for three years without the institution of an action to enforce such regulation, such building shall be deemed a nonconforming building in relation to such boundaries . . . ." General Statutes § 8-13a (a). Section 8-13a (a) "amounts to a statute of limitations for [certain] non-conforming buildings." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 4.35, p. 110. The only issue we must decide[4] is whether the Daws or the zoning enforcement officer tolled the statutory period by instituting an action to enforce. We conclude that they did not.

The three sides in this litigation each offer a different interpretation of what constitutes "the institution of an action to enforce" under § 8-13a (a). The plaintiff argues that a civil action for an injunction was required, either by the zoning enforcement officer under § 8-12 or by the Daws. See *Miskimen* v. *Biber*, 85 Conn. App. 615,

---

[4] The parties dispute whether the three year period began in December, 1997, when the addition was completed or on September 30, 1999, when the court sustained the Daws' appeal of the variance to build the addition and, thus, the structure was in violation of the regulations. Given our decision and the dates involved, however, we need not address the issue of when the statutory period began. Because the zoning enforcement officer did not initiate an action to enforce the regulations until April, 2004, the action taken was untimely or inadequate regardless of when the period began.

617 n.3, 858 A.2d 806 (2004) (private action to enforce zoning regulations), cert. denied, 272 Conn. 916, 866 A.2d 1287 (2005). The board argues that the issuance of a cease and desist order is the institution of an action to enforce the regulations.[5] The Daws argue that their two variance appeals were actions to enforce the zoning regulations. We agree with the plaintiff.

As the first step in statutory analysis, we examine the relevant language of § 8-13a (a) to determine whether it is, as the plaintiff claims, plain and unambiguous. To determine whether statutory language is plain and unambiguous, we examine the text itself and its relationship to other statutes. "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004). We conclude that, given a construction of generous breadth, the phrase "institution of an action to enforce" is ambiguous, as an action to enforce may be either a civil action in court or any formal enforcement action, including a cease and desist order. See *Arute Bros., Inc.* v. *Dept. of Transportation*, 87 Conn. App. 367, 372, 865 A.2d 464 (2005) (concluding that word *action* is ambiguous in accidental failure of suit statute, General Statutes § 52-592).

Because we conclude that there is ambiguity, we must consider "the legislative history of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law

---

[5] The board further argues that it enjoyed an implied tolling period while it remained allied with the plaintiff in the variance litigation that culminated in June, 2001. Because, as we will discuss, our statutes separate and distinguish variance appeals from zoning enforcement actions, we are not persuaded that a variance appeal can toll a limitation to an enforcement action.

principles governing the same general subject matter." *Teresa T.* v. *Ragaglia,* supra, 272 Conn. 742.

Most importantly, our review of our statutes and appellate case law reveals that "the institution of an action" has never been held to mean anything other than the filing of a civil action in court. See generally General Statutes § 47-258 (b) (employing phrase "institution of an action to enforce" in context of condominium association lien, which requires civil action to enforce); General Statutes § 47a-14h (a) (employing phrase "institution of an action" in context of landlord-tenant law and requiring civil action in Superior Court); *Blumenthal* v. *Kimber Mfg., Inc.,* 265 Conn. 1, 3 n.2, 826 A.2d 1088 (2003) (under Connecticut Antitrust Act, General Statutes § 35-24 et seq., attorney general has authority to investigate suspected violations and conduct discovery "without the institution of an action alleging a violation of the act"); *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 534, 582 A.2d 1174 (1990) (employing term in its usual sense as civil action); *Giulietti* v. *Giulietti,* 65 Conn. App. 813, 872, 874, 784 A.2d 905 (same), cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). Accordingly, we are not inclined to extend the meaning of the phrase "the institution of an action to enforce" to include other formal proceedings unless the legislature has made its intent clear that other proceedings will suffice. It has not done so.

The legislative history reveals little about the intended construction of the phrase. The only discussion of that which is meant by the "institution of an action to enforce" occurred during the debate of a 1991 amendment that is not relevant to this case. The term is original to the statute, which was enacted in 1967.

During the debate of the 1991 amendment, the following exchange occurred on the floor of the House of Representatives: "[Representative Dale W. Radcliffe:]

What is involved in initiation of an action? Does that mean a legal suit? Does that mean a complaint to the building official? Does that mean the issuance of a cease and desist order? What has to be done to prevent this use from becoming basically a [non]conforming use in perpetuity? [Representative Douglas C. Mintz:] Through you, Mr. Speaker, I believe an institution of an action is clear on its face that it's an action in the Superior Court to enforce the regulation." 34 H.R. Proc., Pt. 15, 1991 Sess., pp. 5604–5605. Representative Mintz almost immediately disavowed his statement, however, noting that whatever procedures were already required by the term would not be altered by the proposed amendment to the statute. Id., pp. 5607–5608. No other discussion of the term's intended meaning can be found in earlier legislative history except for occasional repeating and paraphrasing of the statutory language and general statements to the effect that the proposed bill or amendment required the municipality to take action to abate the violation; see 12 H.R. Proc., Pt. 8, 1967 Sess., p. 3648; or that the municipality only has so much time to "complain" about a zoning violation. See 14 H.R. Proc., Pt. 6, 1971 Sess., p. 2583, remarks of Representative Herbert V. Camp, Jr. In short, there is no evidence of a legislative intent to expand the ordinary meaning of "the institution of an action."

We next address the Daws' argument that their variance appeals constituted the institution of an action to enforce the zoning regulations and the board's argument that a cease and desist order is an action to enforce. The overall statutory scheme by which variances are granted and zoning violations are enforced, as well as decisions of the Supreme Court and this court, demonstrate that neither argument is persuasive. First, as to the Daws' argument that variance appeals are actions to enforce, it is clear that they are not. The statutes distinguish variance appeals and enforcement.

General Statutes § 8-6 empowers zoning boards of appeal to decide, among other things, the propriety of granting variances. Section 8-12 vests the power to enforce the board's decisions concerning variances elsewhere, particularly with a zoning enforcement officer.

In *Planning & Zoning Commission* v. *Campanelli*, 9 Conn. App. 534, 537, 520 A.2d 242 (1987), we reinstated a civil action to enforce zoning regulations filed during the pendency of a variance appeal and explained the difference between variance appeals and zoning enforcement actions. "The purposes of §§ 8-12 and 8-6 are separate and distinct. Section 8-12 empowers [zoning enforcement] officers to seek relief, that is, to take overt action in order to compel compliance with the zoning laws. The officers can act on their own initiative, and do not act merely in response to an appeal or request. In contrast, § 8-6 enables the board of appeals to grant or deny requests for variances. If no appeals or exceptions are made, the board of appeals has no power to force compliance with the zoning laws." Id. Thus, the filing of an appeal from a variance decision is not the institution of an action to enforce the regulations.

With respect to the board's argument that a cease and desist order is an action to enforce, we again are not persuaded. Although the enforcement provision, § 8-12, authorizes zoning enforcement officers to issue cease and desist orders, such orders are preliminary in nature. In fact, a municipality will often institute a civil action to enforce a cease and desist order. See, e.g., *Rocque* v. *Farricielli*, 269 Conn. 187, 191, 848 A.2d 1206 (2004). Because an order requires a civil action to be enforced, we hesitate in the absence of evidence of legislative intent to ordain it an action to enforce in itself. In *Greenwich* v. *Kristoff*, 180 Conn. 575, 578–79, 430 A.2d 1294 (1980), our Supreme Court held that it

was proper for a zoning enforcement officer to initiate an action for an injunction where the defendant landowner refused to comply with the officer's cease and desist order that he discontinue a nonconforming use. In so doing, the court noted that if the landowner had appealed from the cease and desist order to the zoning board of appeals, the result would have been a determination by the board of the propriety of his use, and not a final order that the landowner discontinue the use. Id., 578. For that final order, a civil action for an injunction would be necessary. In this case, therefore, the various actions taken by the Daws and the board established that the plaintiff's variance was granted improperly and that the addition violated the regulation. They did not, however, properly initiate an action to enforce the regulation until it was too late.

The defendants argue vigorously that § 8-13a (a) was not enacted in order to protect the owners of structures such as the addition at issue here. Their arguments are unavailing. The intended policies for which the statute was enacted were (1) to protect landowners and the public interest by requiring municipalities to act reasonably quickly on certain zoning violations, and (2) to protect innocent landowners from being unable to provide marketable title when a land survey uncovers an existing setback violation.[6] It is true that the plaintiff knowingly built the addition over the setback line during the pendency of a zoning appeal. To that extent, the second enumerated policy is not served by this result. The first policy is served in that the defendants, although they took action, did not take the appropriate action in a timely fashion. Limitations on the time to initiate an action often protect and, indeed, are intended to protect, wrongdoers, although we would not go so

---

[6] General Statutes § 8-13a (a) was initially enacted in 1967 in response to the then relatively new practice of mortgage lending institutions requiring surveys, which often uncovered previously undiscovered setback violations.

far as to label the plaintiff a wrongdoer for electing to build an addition during the pendency of a variance appeal. See footnote 2.

In conclusion, the steps that the defendants took to oppose the construction and maintenance of the plaintiff's home addition, although considerable, did not satisfy the requirement of § 8-13a (a) of the institution of an action to enforce the zoning regulations within three years. The plaintiff's addition became, therefore, a valid, nonconforming structure prior to the initiation of an appropriate enforcement action in April, 2004.

The judgments are reversed and the case is remanded with direction to render judgments sustaining the plaintiff's appeals.

In this opinion the other judges concurred.