# R AND R POOL AND PATIO, INC., ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF RIDGEFIELD
## (SC 16422)

Sullivan, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued May 30—officially released August 14, 2001

*Patricia C. Sullivan*, with whom were *Barbara M. Schellenberg* and, on the brief, *Austin K. Wolf*, for the appellant (defendant).

*Robert A. Fuller*, with whom was *Raymond F. Ross*, for the appellees (plaintiffs).

*Opinion*

KATZ, J. The principal issue in this certified appeal is whether the Appellate Court properly concluded that the doctrine of collateral estoppel precluded the trial court from dismissing an appeal by the plaintiffs, R and R Pool and Patio, Inc. (R & R Pool), David Ross, Mitchell Ross and Phillip Ross,[1] from a cease and desist order sustained by the defendant, the zoning board of appeals of the town of Ridgefield (board), for violating a zoning variance. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 60 Conn. App. 82, 758 A.2d 462 (2000). The Appellate Court predicated its application of the doctrine of collateral estoppel on the trial court's contem-

---

[1] Plaintiffs David Ross, Mitchell Ross and Phillip Ross are principals in R & R Pool. References herein to the plaintiffs are to all of these parties.

poraneous decision sustaining the plaintiffs' appeal from the defendant's denial of a prior site plan application, and thereafter reversed the trial court's judgment dismissing the plaintiffs' appeal. Id., 93, 96. Following our grant of certification to appeal,[2] the board appeals from the judgment of the Appellate Court, claiming that the Appellate Court improperly applied the doctrine of collateral estoppel. We agree with the board and, accordingly, reverse the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following procedural history and facts: "The plaintiffs own property located at 975 Ethan Allen Highway in Ridgefield (property). The property is located in a B-2 zone in which retail uses are not permitted under the Ridgefield zoning regulations. In July, 1990, a tenant of the property at the time, Richard Amatulli, doing business as Classics of Ridgefield, obtained site plan approval to conduct a wholesale oriental rug operation on the property, a permitted use in the zone. On November 5, 1990, the [board] granted Amatulli's application for a variance to conduct retail sales on the property (Amatulli variance). The [board] limited the variance with the following language: 'This action permits wholesale and retail sales to be conducted from the [property], unrestricted as to type of customer or hours of operation, but restricted as to the products to be sold. Such wholesale and retail sales shall be limited to oriental rugs, fine furniture and art.'

"In 1993, the then owners of the property . . . applied for a variance to remove the restrictions and to allow full retail use of the property. The application

[2] We granted the board's petition for certification to appeal limited to the following question: "Did the Appellate Court properly reverse the trial court's dismissal of the plaintiffs' appeal from the zoning officer's cease and desist order?" R & R Pool & Patio, Inc. v. Zoning Board of Appeals, 255 Conn. 902, 762 A.2d 909 (2000).

was denied by the [board] on June 21, 1993, and no appeal was taken therefrom.

"On July 2, 1993, the owners, through their attorney, Melvin J. Silverman, and on behalf of their new tenant, R & R Pool, filed an application for site plan approval with the Ridgefield planning director proposing the use of the property for 'warehouse, office and retail sale of fine outdoor furniture.' In a letter, which was part of the application, Silverman stated that the owners wanted to 'lease the premises to a seller of fine furniture [R & R Pool], albeit of the type which is used generally out of doors.' By letter dated September 24, 1993, the planning director informed Silverman that the application was denied and stated [as one of the] three reasons for such denial: '(1) The business you are planning to operate, with the merchandise you are planning to sell, is not the 'fine furniture' contemplated by the [board] in its decision on . . . [the Amatulli variance] . . . .' The owners and [the plaintiffs] appealed to the [board] (site plan case), and the [board] sustained the planning director's decision by way of a memorandum of decision dated February 14, 1994." Id., 84–85.

The board's memorandum of decision sets forth its reasons as to why the planning director had been correct in denying the plaintiffs' site plan application.[3] The board explained that, although the term "fine furniture" had not been further defined in the Amatulli variance, the term had a particular meaning when the variance was viewed in light of the circumstances surrounding its original approval. The applicant for the original variance, Amatulli, had "presented his request as a unitary operation with the sale of furniture as an adjunct to the sale of oriental rugs and of the same quality as would

---

[3] The board's memorandum of decision cited several reasons justifying the denial of the plaintiffs' application, only one of which is relevant for purposes of this appeal.

often involve the services of an interior decorator." By contrast, the board noted, the plaintiffs had proposed "to have the meaning of the term 'fine furniture' used to include mass produced, outdoor furniture, arguing that it is in fact 'fine furniture.'" The board determined that the furniture that the plaintiffs had proposed to sell was not the kind of merchandise presented to the board when the variance was originally requested, namely, items "that, like oriental rugs, are not stock items, are made by hand, and . . . are expected to appreciate in value with the passage of time." The board concluded: "Outdoor furniture simply does not fit this definition."

On February 24, 1994, the owners of the property and the plaintiffs appealed to the Superior Court, alleging that the board's decision in the site plan case was arbitrary, illegal and an abuse of discretion. The trial court dismissed the action for lack of standing on the ground that the plaintiffs were not the applicants for the site plan approval. The property owners and the plaintiffs appealed from the judgment of dismissal to the Appellate Court. While that appeal was pending, the owners conveyed title to the property to the plaintiffs. The Appellate Court thereafter reversed the judgment of the trial court on the issue of standing and remanded the case for a determination on the merits of the case. See *R & R Pool & Home, Inc.* v. *Zoning Board of Appeals*, 43 Conn. App. 563, 684 A.2d 1207 (1996).[4] On remand, the trial court, *Stodolink, J.*, ultimately sustained the plaintiffs' appeal. The trial court concluded that the record contained "no factual evidence to support the board's conclusion that the plaintiffs' furniture is not the 'fine furniture' contemplated by the [Amatulli] variance." *R & R Pool & Patio, Inc.*

---

[4] At some time during the course of the appeal in the site plan case, the plaintiffs changed the corporation's name from R and R Pool and Home, Inc., to R and R Pool and Patio, Inc.

v. *Zoning Board of Appeals*, Superior Court, judicial district of Danbury, Docket No. 316152 (October 26, 1998).

"During the pendency of the site plan case in Superior Court, the plaintiffs, on July 27, 1995, applied to the planning director for [a second] site plan approval for the 'retail and wholesale sales of oriental rugs, fine furniture and art.' An accompanying statement of proposed use explained that '[t]he property will be used in accordance with the [Amatulli variance]' and that the furniture to be sold would be 'of good quality and the higher-end products. It will be the type of quality of fine furniture which is sold in the better furniture stores in the United States. None of the furniture will be of the plastic type which is generally found in discount stores.'

"Pursuant to the planning director's request for clarification of the use, Raymond Ross, the attorney for the plaintiffs, by letter dated August 15, 1995, stated that 'R & R [Pool] will have the same limited retail sales of "oriental rugs, fine furniture and art" which were previously sold by [Amatulli] under the terms of the [Amatulli] variance. The furniture will be of similar kind and nature to that which was sold by [Amatulli] and falls within the terms of the variance. The products will be of the high-end quality, well styled and upscale products which were previously sold. The products will be customarily used by consumers in such rooms of a home as a den or a dining room. The sale of these furniture items are often made with the assistance of an interior decorator or designer. . . . There will be no plastic furniture, no mass produced assembly line type of furniture, and no athletic equipment such as swingsets.'

"[Prior to the trial court's decision in the site plan case, on] August 23, 1995, the planning director issued

site plan approval to the plaintiffs [on the second application] subject to the condition that 'the limited retail sales will be exactly as permitted and described in the grant of [the Amatulli variance] and further defined in [the board's memorandum of decision denying the first application for site plan approval].'

"In September, 1995, the plaintiffs began retail sales of furniture on the property. On December 29, 1995, the Ridgefield zoning enforcement officer issued a cease and desist order to the plaintiffs ordering that they remedy or discontinue (1) conducting retail sales in a B-2 zone, (2) retail sales not allowed under the Amatulli variance and (3) retail sales not presented during the site plan process and sales that specifically violate the conditions of the plaintiffs' site plan approval." *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, supra, 60 Conn. App. 87–88.

On January 5, 1996, the plaintiffs appealed from the cease and desist order to the board. On April 29, 1996, after a hearing, the board sustained the decision of the zoning enforcement officer to issue the cease and desist order. The board concluded, in part, that the plaintiffs had "applied for [s]ite [p]lan [a]pproval for one use [in the second site plan application], and after receiving it . . . put the property to another use." The relevant portion of the board's memorandum of decision focused on the documents submitted by the plaintiffs as part of the second site plan approval process. The board noted that the plaintiffs' site plan had been approved for the sale of " 'oriental rugs, fine furniture and art' . . . ." The planning director's approval of that application, the board explained, was predicated on assurances made in Raymond Ross' letter clarifying that the plaintiffs' proposed use included " 'no plastic furniture [and] no mass produced assembly line type of furniture . . . .' "

The board further explained that although "[m]uch [had] been made of the words 'fine furniture' . . . such analysis . . . [was] based on wrenching the words from the context in which they were originally used. . . . The type of merchandise offered for sale at [the plaintiffs'] location is to be hand-crafted, one-of-a-kind, and expected to appreciate in value over the years." The board concluded that "[t]he outdoor furniture . . . offered for sale at [the plaintiffs' property] does not meet the aforementioned criteria."

On May 2, 1996, the plaintiffs appealed to the Superior Court from the board's decision sustaining the zoning enforcement officer's cease and desist order. The plaintiffs argued that the board's decision was arbitrary and illegal in that: (1) the Amatulli variance runs with the land and the board could not modify it; (2) the term fine furniture was vague and involved a matter of personal taste; and (3) the plaintiffs were denied due process because they were not informed which items did not constitute fine furniture.

The trial court, *Slodolink, J.*, heard the appeal of the cease and desist case contemporaneously with the remand of the plaintiffs' appeal of the board's denial of the first site plan application. As noted previously, the trial court sustained the plaintiffs' appeal in the site plan case. In its memorandum of decision in the cease and desist case, which was issued on the same day as that issued in the site plan case, the court dismissed the plaintiffs' appeal from the board's decision sustaining the cease and desist order. The trial court concluded that the board's reason for sustaining the order, namely, that the plaintiffs "applied for site plan approval for one use, and after receiving it . . . put the property to another use," was reasonably supported by the record.

The trial court noted the assurances made by Raymond Ross during the application process that there

would be " 'no plastic furniture, no mass produced assembly line type of furniture, and no athletic equipment such as swingsets' " sold on the property. The court further noted that the record contained "nine photographs of chairs and other furniture that appear to be 'mass produced assembly line type of furniture.' " In light of that evidence, the court concluded that the board's reason for sustaining the cease and desist order was sufficiently supported by the record and, accordingly, rendered judgment dismissing the plaintiffs' appeal.

The Appellate Court granted the plaintiffs' petition for certification to appeal in the cease and desist case. Thereafter, the Appellate Court granted the plaintiffs' motion to take judicial notice of the site plan case. On appeal, the plaintiffs asserted that the trial court improperly had: (1) failed to conclude that they were denied due process of law by the zoning enforcement officer and the board; (2) concluded that the board's decision was adequately supported by the record; and (3) failed to determine that the court's decision in the companion site plan case made the plaintiffs' subsequent site plan application unnecessary and moot. They further contended that the trial court's decision in the site plan case precluded the board, under the doctrine of collateral estoppel, from claiming that the plaintiffs had violated the terms of the variance.

The Appellate Court concluded that the trial court had determined in the site plan case that the Amatulli variance could not be construed to limit the kind of furniture sold on the property. *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals,* supra, 60 Conn. App. 91. The Appellate Court determined that the issue of what constituted fine furniture was a necessary element of both the site plan and the cease and desist cases. Id., 93. Because the board had failed to appeal from

the trial court's judgment in the site plan case, the Appellate Court concluded that the board was precluded, under the doctrine of collateral estoppel, from asserting in the cease and desist case that " 'fine furniture,' as it appear[ed] in the Amatulli variance, [meant] something 'finer' than ordinary furniture." Id. Consequently, the Appellate Court reversed the trial court's judgment in the cease and desist case, concluding that the plaintiffs' use of the property conformed to the Amatulli variance as defined by the trial court. Id., 96. This appeal followed.

The board claims that the Appellate Court improperly applied the doctrine of collateral estoppel because the trial court had not made a determination in the site plan case as to the definition of fine furniture as used in the Amatulli variance. Conversely, the plaintiffs argue that the Appellate Court properly applied collateral estoppel because, they contend, the meaning of fine furniture was actually litigated by the parties and necessarily determined by the trial court in the site plan case. The plaintiffs also contend, as alternative grounds for affirming the judgment of the Appellate Court, that: (1) Ross' letter clarifying the plaintiffs' proposed use in the second site plan application cannot limit their rights under the variance; (2) compliance with the second site plan application was irrelevant because the trial court's decision in the site plan case effectively mooted the second plan; (3) the trial court improperly found that the board's reasons for sustaining the cease and desist order were reasonable and supported by the record; and (4) the board's failure to specify which furniture violated the Amatulli variance deprived the plaintiffs of due process. We agree with the board that the Appellate Court improperly invoked the doctrine of collateral estoppel. We also reject the plaintiffs' alternative grounds for affirmance.

I

Whether the Appellate Court properly applied the doctrine of collateral estoppel is a question of law subject to plenary review. *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 594, 726 A.2d 502 (1999). The fundamental principles underlying the doctrine are well established. "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been actually decided and the decision must have been necessary to the judgment. . . . *Virgo* v. *Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988); see also *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991).

"An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 772–73, 770 A.2d 1 (2001), quoting *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 714–15, 627 A.2d 374 (1993); see *Gladysz* v. *Planning & Zoning Commission*, 256 Conn. 249, 260–61, 773 A.2d 300 (2001).

In order to determine whether the doctrine of collateral estoppel was properly applied in the present case, therefore, we consider two questions. The first is whether the meaning of fine furniture, as used in the Amatulli variance, was actually litigated in the site plan case. The second is whether the trial court made a determination that was necessary to its judgment with respect to that issue. Specifically, we must consider whether a definition of fine furniture was a necessary predicate to the trial court's judgment sustaining the plaintiffs' appeal in the site plan case.

In considering these questions, we begin by noting the scope of review that guided both the board, when it reviewed the first site plan application, and the trial court when it subsequently reviewed that decision. See *Scalzo* v. *Danbury*, 224 Conn. 124, 129, 617 A.2d 440 (1992) (examining trial court's scope of review to determine if issue was essential to judgment for collateral estoppel purposes). The Ridgefield planning director is charged with the authority, pursuant to the town's zoning regulations, to grant or deny site plan applications.[5] An aggrieved party may appeal the director's decision to the board,[6] which, in turn, reviews the planning director's decision de novo. *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 90, 626 A.2d 744 (1993); see also

[5] Section 324.0 B of the Ridgefield zoning regulations provides: "General procedure. All applications requiring site plan approval shall be referred to the planning director who shall approve, disapprove or approve with conditions and/or modifications the proposed site plan within sixty-five (65) days after receiving a completed application. Any such application not acted upon within the prescribed period shall be considered approved providing it conforms to all applicable requirements of the zoning regulations."

[6] Section 324.0 G of the Ridgefield zoning regulations provides: "Recourse. Decisions made by the planning director or the zoning enforcement officer in pursuance of section 324.0 F may be appealed by the applicant to the zoning board of appeals."

General Statutes § 8-6 (a).[7] "It is the board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts." *Caserta* v. *Zoning Board of Appeals*, supra, 90. The board is vested with liberal discretion in conducting hearings. Id., citing *Parsons* v. *Board of Zoning Appeals*, 140 Conn. 290, 292, 99 A.2d 149 (1953) (noting that zoning boards may, in certain circumstances, act on information known but not presented at hearings). Its power with respect to site plan applications decisions, however, is constrained by statute. "A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. . . ." General Statutes § 8-3 (g);[8] see also *Friedman* v. *Planning & Zoning*

[7] General Statutes § 8-6 (a) provides in relevant part: "The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. . . ."

[8] General Statutes § 8-3 (g) provides: "The zoning regulations may require that a site plan be filed with the commission or other municipal agency or official to aid in determining the conformity of a proposed building, use or structure with specific provisions of such regulations. If a site plan application involves an activity regulated pursuant to sections 22a-36 to 22a-45, inclusive, the applicant shall submit an application for a permit to the agency responsible for administration of the inland wetlands regulations not later than the day such application is filed with the zoning commission. The decision of the zoning commission shall not be rendered on the site plan application until the inland wetlands agency has submitted a report with

*Commission*, 222 Conn. 262, 267–68, 608 A.2d 1178 (1992); *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, 15 Conn. App. 561, 566–68, 545 A.2d 602, aff'd, 211 Conn. 331, 559 A.2d 196 (1989). If the application conforms to the zoning regulations, the board cannot deny the application for subjective reasons that bear no relationship to zoning regulations. *Kosinski* v. *Lawlor*, 177 Conn. 420, 423–24, 418 A.2d 66 (1979); see also *Allied Plywood, Inc.* v. *Planning & Zoning Commission*, 2 Conn. App. 506, 511–12, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). If the site plan is either denied or modified, the board is required under § 8-3 (g) to set forth the reasons for its decision. See footnote 8 of this opinion.

An adverse decision by the board may be appealed to the Superior Court under General Statutes § 8-8 (b).[9]

its final decision. In making its decision the zoning commission shall give due consideration to the report of the inland wetlands agency. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning or inland wetlands regulations. Approval of a site plan shall be presumed unless a decision to deny or modify it is rendered within the period specified in section 8-7d. A certificate of approval of any plan for which the period for approval has expired and on which no action has been taken shall be sent to the applicant within fifteen days of the date on which the period for approval has expired. A decision to deny or modify a site plan shall set forth the reasons for such denial or modification. A copy of any decision shall be sent by certified mail to the person who submitted such plan within fifteen days after such decision is rendered. The zoning commission may, as a condition of approval of any modified site plan, require a bond in an amount and with surety and conditions satisfactory to it, securing that any modifications of such site plan are made or may grant an extension of the time to complete work in connection with such modified site plan. The commission may condition the approval of such extension on a determination of the adequacy of the amount of the bond or other surety furnished under this section. The commission shall publish notice of the approval or denial of site plans in a newspaper having a general circulation in the municipality. In any case in which such notice is not published within the fifteen-day period after a decision has been rendered, the person who submitted such plan may provide for the publication of such notice within ten days thereafter."

[9] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal

The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal. *Francini* v. *Zoning Board of Appeals*, 228 Conn. 785, 791, 639 A.2d 519 (1994); *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269, 588 A.2d 1372 (1991). "Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the [board] was required to apply under the zoning regulations." (Internal quotation marks omitted.) *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 208, 658 A.2d 559 (1995). " 'It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own.' " *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, 225 Conn. 731, 744, 626 A.2d 705 (1993), quoting *Farrington* v. *Zoning Board of Appeals*, 177 Conn. 186, 190, 413 A.2d 817 (1979); accord *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 380, 400, 610 A.2d 620 (1992) (noting that on factual questions reviewing court cannot substitute its judgment for that of agency).

In the appeal of the site plan case to the trial court, the plaintiffs claimed that the board had acted arbitrarily and unreasonably by sustaining the planning director's decision to deny its site plan application. The plaintiffs contended that there were only two issues before the trial court: (1) whether the record showed that the plaintiffs were going to sell merchandise

shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

allowed by the Amatulli variance, namely, fine furniture; and (2) whether the record showed any physical change in the property from Amatulli's approved site plan. The plaintiffs claimed that the record reflected uncontroverted evidence that they would be selling fine furniture that comported with the Amatulli variance.

The record of the board's hearing revealed that the plaintiffs had challenged the foundation of the planning director's determination that what they sold did not constitute fine furniture. When cross-examined by the plaintiffs, the director acknowledged that he had not seen any definition of the term fine furniture, although he noted that the individual words could be defined. The plaintiffs submitted to the board references from several dictionaries to show that the phrase fine furniture was not defined as well as letters from several authoritative sources stating that fine furniture did not have a particular meaning in the furniture trade beyond implying quality.

In their argument before the trial court, the plaintiffs focused in particular on the testimony before the board from persons employed in the furniture trade who were familiar with the products that the plaintiffs intended to sell. Each of these witnesses stated in no uncertain terms that the furniture carried by R & R Pool was indeed fine furniture, although two witnesses noted that they did not have any specific meaning for the phrase beyond "high quality" or "high end furniture." The plaintiffs claimed that the board had had no basis for disregarding this evidence when it neither had presented experts of its own nor had any expertise on the matter. Therefore, the plaintiffs argued, the record did not support the board's decision to deny the application and the denial was unreasonable.

The trial court agreed with the plaintiffs. First, the trial court determined that the board's failure to con-

duct a de novo review and its reliance almost exclusively on the planning director's judgment was unreasonable. Second, the trial court noted that "[t]he record . . . contain[ed] no factual evidence to support the board's conclusion that the plaintiffs' furniture [was] not the 'fine furniture' contemplated by the [Amatulli] variance," pointing specifically both to the board's failure to justify its disregard for the uncontroverted expert witness testimony[10] and to the board's reliance on the subjective judgment of the planning director,[11] who neither had visited the plaintiffs' store nor seen the merchandise at issue.

The critical part of the trial court's decision in the site plan case was its discussion of the evidence pertaining to the meaning of the phrase fine furniture in the Amatulli variance. The court noted that "the plaintiffs submitted numerous excerpts from dictionaries and other sources demonstrating the lack of any definition of 'fine furniture.' . . . Letters were also submitted [that] . . . indicated that there is no definition of fine furniture, except that the terms when used together generally imply quality." The court further noted that, despite this evidence, "[t]he record does not demonstrate that the board offered any definitions, or any ascertainable guidelines or standards, upon which a subsequent owner or lessor of the subject property could have reasonably relied . . . when selling furniture from the property. . . . [T]he board never defined the term 'fine furniture' when it granted Amatulli the

---

[10] The trial court characterized the four witnesses who testified on behalf of the plaintiffs as "experienced salespersons and individuals closely associated with the high end furniture business."

[11] When asked at the board hearing what he thought constituted fine furniture, the planning director replied that it is "[a type of furniture] that is rather expensive, that I would purchase not [for] the outdoors, but [for] the indoors . . . one that I would pay a substantial amount of money for . . . one that is unique; and . . . one that pleases my eyes and fits my pocket[book]."

variance. . . . The record indicates that the board relied on its own subjective beliefs in its determination that the plaintiffs' furniture did not comport with the variance." As a result of its review of the record, the trial court concluded that it "[could] not find any substantial evidence in the record to support the board's conclusion that the plaintiffs did not sell 'fine furniture.'"

The plaintiffs contend that the trial court made a determination in the site plan case that the Amatulli variance could not be construed to limit the kind of furniture that they could sell on the property. We disagree. We conclude that the foregoing discussion simply reflects the trial court's reasoning that, in the absence of a definition of fine furniture or some other evidence demonstrating that the furniture the plaintiffs proposed to sell was not fine furniture, the board had no reasonable basis upon which to conclude that the plaintiffs' application did not comport with the variance. The board's failure to define fine furniture was merely one of several factors that the trial court weighed when determining the sufficiency of the evidence and, therefore, was not a necessary predicate to its decision.

It is important to note that the plaintiffs' interpretation puts the judgment in the site plan case in direct conflict with the judgment in the cease and desist case, both of which were rendered by the trial court on the same day. In the cease and desist case, the trial court dismissed the plaintiffs' appeal from the board's issuance of the cease and desist order for violating the Amatulli variance. Had the trial court determined in the site plan case that the Amatulli variance could not be construed to mean anything other than ordinary furni-

ture, there would have been no reason for it to dismiss the plaintiffs' appeal in the cease and desist case.[12]

In its attempt to reconcile the two cases, the board contends that the trial court addressed the plaintiffs' *proposed* use in the site plan case while the cease and desist case addressed the plaintiffs' *actual* use. We agree with the board that the better reading is the one that harmonizes the two cases. Cf. *Rivera* v. *Commissioner of Correction*, 254 Conn. 214, 242, 756 A.2d 1264 (2000) (noting court's duty to reconcile and give concurrent effect to conflicting statutes where possible); *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 258, 608 A.2d 1174 (1992) (noting preference for reconciling potentially conflicting statutory provisions), overruled on other grounds, 242 Conn. 689, 699 A.2d 1003 (1997); *Lauer* v. *Zoning Commission*, 220 Conn. 455, 469–70, 600 A.2d 310 (1991) (noting "ordinary practice" of reading trial court record to support, rather than contradict, its judgment). This approach is particularly persuasive when we consider the application of collateral estoppel, because one of the policy considerations underlying the doctrine is "to prevent inconsistent judgments which undermine the integrity of the judicial system . . . ." *Isaac* v. *Truck Service, Inc.*, 253 Conn. 416, 422, 752 A.2d 509 (2000); accord *Delahunty* v. *Mas-*

[12] Had the trial court made a finding that the Amatulli variance, as approved, should be limited in scope, the court would have impermissibly substituted its judgment for that of the board. See, e.g., *Connecticut Resources Recovery Authority* v. *Planning & Zoning Commission*, supra, 225 Conn. 744–45 (trial court incorrectly substituted its judgment for that of board in determining that expanded site disposal was protected nonconforming use); see also, e.g., *Fernandes* v. *Zoning Board of Appeals*, 24 Conn. App. 49, 54–55, 585 A.2d 703 (1991) (trial court exceeded scope of review by substituting its judgment for board's on issue of whether change in circumstances had occurred between defendant's two variance applications); *Horn* v. *Zoning Board of Appeals*, 18 Conn. App. 674, 677, 559 A.2d 1174 (1989) (trial court exceeded scope of review in determining that evidence was not sufficient to establish merger for denial of certificate of zoning compliance).

*sachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 591, 674 A.2d 1290 (1996). We conclude, therefore, that the meaning of fine furniture as used in the Amatulli variance was neither litigated by the parties nor decided by the trial court in the site plan case. Therefore, the trial court did not render final judgment on an issue that would preclude the board, under the doctrine of collateral estoppel, from ensuring in the cease and desist case that the plaintiffs' actual use complied with its site plan application to sell fine furniture.[13] Accordingly, the Appellate Court improperly applied the doctrine of collateral estoppel.

## II

In light of the foregoing, we next address the plaintiffs' alternative grounds for affirming the judgment of the Appellate Court. The plaintiffs claim that Raymond Ross' letter stating that the plaintiffs would not sell mass produced furniture, which was the basis for the cease and desist order, cannot be given effect because the planning director was required by law to approve a conforming site plan application without reference to the letter and that the letter could not limit their use of the property under the variance.[14] The plaintiffs next

---

[13] We note that, based on our review of the record in this case, an additional concern of the board in regard to the Amatulli variance was with traffic and safety issues related to the property. The record reveals that the property is located on a triangular parcel of land formed by the intersection of two heavily traveled roads. Ingress and egress from the property had proved to be difficult in the past. In light of these concerns, the board had expressed concerns about retail use of the property that would draw heavy traffic. This further supports the conclusion that the meaning of fine furniture was not a necessary predicate to the board's decision in the site plan case.

[14] The plaintiffs have argued more broadly that the trial court's decision in the cease and desist case was improper because their use of the property complied with the variance and there was no evidence in the record that they were selling anything other than furniture. The issue with respect to Raymond Ross' letter was an argument that the plaintiffs offered in support of this claim. The plaintiffs' broader claim is predicated on their belief that the trial court determined in the site plan case that the variance could not be limited. We concluded, however, in part I of this opinion that the trial

contend that, even if the letter could be given effect, it was part of the second site plan which was, in essence, mooted by the trial court's decision in the first site plan. Finally, the plaintiffs argue that the trial court improperly concluded that the board's decision to sustain the issuance of the cease and desist order was reasonable and supported by the evidence. We disagree.

In the cease and desist case, the trial court concluded that the photographs of the plaintiffs' furniture that were taken by the zoning enforcement officer sufficiently established a violation of an express provision of the plaintiffs' site plan application. The court predicated that conclusion on the letter written by Raymond Ross in which he assured the planning director that "[t]here will be no . . . mass produced assembly line type of furniture . . . ." According to the court, this language provided the standard by which the plaintiffs' compliance with the variance could be gauged.

The zoning commission has authority pursuant to § 8-3 (g) to require site plan approval. See footnote 8 of this opinion. The specific materials that comprise a "site plan" are not set forth in the statute, but Connecticut courts have determined that the site plan includes "the entire package of documents submitted to a zoning 'commission or other municipal agency or official to aid in determining the conformity of a proposed . . . use . . . with specific provisions of such [zoning] regulations.' " *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 15 Conn. App. 566. In addition, Ridgefield zoning regulations specify that applications for site plan approval shall include "[a]ny other information which in the director's judgment will assist

court did not make any such determination and, therefore, we address only the narrower issue of the effect of Raymond Ross' letter.

in evaluating the proposal." Ridgefield Zoning Regs., § 324.0 D (6).[15]

As noted previously, the plaintiffs submitted to the planning director a statement describing their proposed use for the property. The planning director then requested that the plaintiffs clarify the proposed use, which prompted Raymond Ross' letter. The plaintiffs have provided no authority to support the proposition that this letter would not be encompassed within the "entire package of documents"; *SSM Associates Ltd. Partnership* v. *Plan & Zoning Commission*, supra, 15 Conn. App. 566; that aided the planning director in ensuring that the plaintiffs met all applicable zoning regulations, including the Amatulli variance. The planning director's authority pursuant to § 8-3 (g) would permit the director to consider information necessary to ensure compliance with the site plan application. Cf. *Friedman* v. *Planning & Zoning Commission*, supra, 222 Conn. 267–69 (upholding denial of plaintiff's site plan application where it did not include traffic study required by zoning regulations).

We disagree with the plaintiffs' characterization of Raymond Ross' letter as limiting rights to which they

[15] Section 324.0 D of the Ridgefield zoning regulations provides: "Applications. Applications for site plan approval shall consist of the following:

"(1) Application fee in the amount of seventy-five dollars ($75.00);

"(2) A statement describing in detail the proposed use or uses;

"(3) Two (2) copies of a site plan at acceptable scale incorporating a perimeter survey of the premises or parcel of land prepared by a licensed surveyor or registered engineer showing, where applicable, existing and/or proposed buildings and appurtenances thereof, existing and/or proposed parking accommodations, location of existing and proposed buffer strips and landscaping, access and egress details for pedestrian an[d] vehicular traffic, and location and design of existing and proposed signs;

"(4) Where applicable, two (2) copies of drawings at acceptable scale showing floor plans and exterior elevations of buildings;

"(5) Where applicable, two (2) copies of a sketch drawing showing location of public roads, adjacent road cuts, and width of rights-of-way and travelway;

"(6) Any other information which in the director's judgment will assist in evaluating the proposal."

were entitled under the Amatulli variance. The letter addressed the plaintiffs' understanding concerning the type of merchandise that would *not* be permitted under the variance. The planning director's approval of the site plan application shortly after receiving that letter reflects his agreement with that interpretation. In effect, Raymond Ross' letter did not define fine furniture, but, rather, indicated what, in the plaintiffs' opinion, the Amatulli variance prohibited.

The plaintiffs also claim that the letter should not be given any effect because it was part of the second site plan application which, in the plaintiffs' view, became moot once the trial court sustained the appeal in the site plan case. The plaintiffs argue that both site plans sought the same right—to sell furniture pursuant to the Amatulli variance. The plaintiffs claim that once the first site plan decision allowed them to sell furniture without limitation, the second site plan application, which had been approved before the trial court sustained the appeal of the first site plan, became irrelevant. This claim is without merit.

The plaintiffs submitted the second site plan application while the appeal from the board's denial of their first site plan application was pending. The planning director approved the second site plan application. The plaintiffs concede in their brief that "[t]here was no difference between the first and second site plan applications."[16] As a result, once the second site plan was approved, there was no additional relief that the trial court could have afforded the plaintiffs by deciding the appeal on the first site plan application. " '[M]ootness'

---

[16] If any distinction could be made between the two applications, it was that the first site plan proposed a more limited use than the second site plan. The first plan's proposed use of the property was for "[w]arehouse, office and retail sale of fine outdoor furniture"; the second plan's proposed use was for "retail and wholesale sales of oriental rugs, fine furniture and art."

. . . applies to a situation where, during the pendency of an appeal, events have occurred that make an appeals court incapable of granting practical relief through a disposition on the merits." *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 181, 527 A.2d 688 (1987); cf. *St. Pierre* v. *Solnit*, 233 Conn. 398, 400–402, 658 A.2d 977 (1995) (challenge of zoning commission's authority to enact special use permit that expired after two years mooted by repeal of limitation); *Rosnick* v. *Zoning Commission*, 172 Conn. 306, 308–309, 374 A.2d 245 (1977) (expiration of zoning regulation mooted plaintiff's request for declaratory relief). Therefore, if either of the plaintiffs' site plan applications had been rendered moot in this case, it would have been the first rather than the second. Moreover, the plaintiffs and the board resolved any differences concerning the variance when the board granted the second site plan application. See *Waterbury Hospital* v. *Connecticut Health Care Associates*, 186 Conn. 247, 251, 440 A.2d 310 (1982) (noting that actions of parties in settling differences may cause case to become moot).

The plaintiffs next argue that, even if the second site plan is valid, the reasons cited by the board for sustaining the zoning enforcement officer's cease and desist order were arbitrary and unreasonable. We disagree. The trial court's scope of review in the cease and desist case was limited to reviewing the record to ensure that there was sufficient evidence to support the board's reasons and that those reasons were relevant to pertinent zoning considerations. See *Francini* v. *Zoning Board of Appeals*, supra, 228 Conn. 791; *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, supra, 218 Conn. 269. As noted previously, the record contained photographs of the plaintiffs' merchandise that, according to the trial court, appeared to show mass produced furniture. Therefore, the merchandise that the plaintiffs were selling reasonably appeared

to be in contravention of their attorney's representations to the board in the second site plan application. Consequently, in light of our previous discussion of the effect of Raymond Ross' letter, we conclude that there was sufficient evidence to support the board's statement that the plaintiffs had applied for one use but then put the property to another use.

The plaintiffs' final claim is that they were denied due process by both the zoning enforcement officer and the board. The plaintiffs contend that the zoning enforcement officer violated their due process rights by failing to specify in the cease and desist order what items of furniture violated the variance. They maintain that the board denied them due process because the term fine furniture is not defined in zoning regulations and it also failed to notify the plaintiffs what items violated the zoning regulations. Their claim, in essence, is that they could not respond adequately to the cease and desist order without more particular facts. This issue was raised below but not decided by either the trial court or the Appellate Court. We find no merit in the plaintiffs' claim.

"[D]ue process of law requires that the parties involved have an opportunity to know the facts on which the [board] is asked to act . . . and to offer rebuttal evidence." (Internal quotation marks omitted.) *Grimes* v. *Conservation Commission*, 243 Conn. 266, 274, 703 A.2d 101 (1997), quoting *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 207, 355 A.2d 21 (1974). Due process is met, however, where the parties have sufficient notice of the material aspects of the issue. See *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 723–24, 563 A.2d 1339 (1989).

The notice that the plaintiffs received was the cease and desist order, which stated in relevant part that the

plaintiffs were engaging in "retail sales of merchandise/ products that specifically violate the [s]ite [p]lan [application's] conditions of approval." The plaintiffs claim that, because they were selling furniture, a use they contend complies with the variance in light of the trial court's decision in the site plan case, due process required that they be told more specifically what merchandise violates the variance. We have concluded in part I of this opinion, however, that the trial court never determined that the variance was unlimited.

The board approved the plaintiffs' second site plan application based, in part, on the plaintiffs' own representation that they would not sell "mass produced assembly line type of furniture." The cease and desist order was issued to preclude the plaintiffs from engaging in further retail sales of just that, mass produced assembly line furniture that did not comply with the terms of the Amatulli variance. This case does not present a situation wherein a store owner blindly receives shipments from a parent company unaware of its source. The plaintiffs' evidence submitted to the board in the site plan case indicated that they knew exactly which furniture was mass produced. Accordingly, we find no merit in the plaintiffs' due process claim.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.