[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff alleges that he is the owner of premises located at 376 Old Sherman Road, Woodbury, Connecticut. (Appeal, dated November 23; 1998, ¶ 3). By application, the plaintiff submitted a request for a variance from the Woodbury zoning regulations to the Woodbury Zoning Board of Appeals. (Return of Record [ROR], Exhibit A-1). The plaintiff sought a variance to use an already existing second floor living area of a barn on his premises as an accessory apartment, citing § 5.3.2.b, 5.3.2.c, 4.3.11, 2.2, and 8.8.1.a of the zoning regulations. (ROR, Exhibit A-1). The plaintiff claimed hardship in that "[t]he steepness of the lot did not permit the expansion of the house without substantial cutting of banks and filling." (ROR, Exhibit A-1). The plaintiff claimed that the pole barn already existed on the only other flat part of the lot and that use of the accessory apartment in the barn rather than adding on to the house "would result in much less environmental impact and site disturbance." (ROR, Exhibit A-1). The plaintiff further claimed that financial hardship required him to live in the accessory apartment in the barn while renting the main house. (ROR, Exhibit A-1) CT Page 2541
On November 2, 1998, the defendant conducted a public hearing on the plaintiff's application. (ROR, Exhibit C-1) Following a discussion of the application, the five members of the defendant board voted unanimously to deny the plaintiff's application. (ROR, Exhibit C-2, pp. 2-3). In denying the plaintiff's application, the defendant stated the following reasons on the record: (1) The property does not meet minimum lot area requirements per § 4 of the zoning regulations to qualify for the granting of a variance, (2) Other apartment alternatives are available within the existing main dwelling, and (3) There was insufficient hardship evidence presented. (ROR, Exhibit C-2, p. 3). The defendant notified the plaintiff that his application for a variance "of section 5.3.2.b . . . for the use of an accessory apartment on the second floor of a pre-existing pole barn" was denied by a letter dated November 3, 1998 with an enclosed legal notice to be published in a local newspaper on November 11, 1998. (ROR, Exhibit E-2). The plaintiff now appeals from the defendant's denial of variance application #481.
General Statutes § 8-8 governs an appeal from the decision of a planning and zoning commission to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Cardoza v. ZoningCommission, 211 Conn. 78, 82, 557 A.2d 545 (1989).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). An owner of property that is the subject of the board's decision is aggrieved. Winchester Woods Associates v. Planning and ZoningCommission, 219 Conn. 303, 308, 592 A.2d 953 (1991).
In the present appeal, the plaintiff alleges that he is statutorily aggrieved because he owns the subject property and is directly affected by the defendant's denial of his variance application. At trial on October 26, 2001, the plaintiff submitted two certified copies of deeds to the court as proof of his ownership. The plaintiff claims he is further aggrieved because the development and use of his property is substantially restricted and reduced by the defendant's denial of his application.
Accordingly, this court finds that the plaintiff is aggrieved.
General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was CT Page 2542 published as required by the general statutes." Subsection (e) further provides that "service shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The plaintiff alleges that the board's decision, denying his application for a variance, was published on November 11, 1998. (Appeal, ¶ 2). This allegation is substantiated by a copy of the notice of decision, as submitted to the VOICES newspaper, contained in the record. (ROR, Exhibit E-2). On November 24, 1998, this appeal was commenced by service of process on the chairman of the Woodbury Zoning Board of Appeals, the town clerk of the Town of Woodbury, and the zoning enforcement officer of the Town of Woodbury. Accordingly, the court finds that this appeal was commenced in a timely manner by service of process upon the proper parties.
"The Superior Court's scope of review [on appeal from a zoning board's decision to grant or deny a variance] is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal." RRPool Patio, Inc. v. Zoning Board of Appeals, 257 Conn. 456, 470,778 A.2d 61 (2001) "Where a zoning agency has [formally] stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the [board] was required to apply under the zoning regulations." (Internal quotation marks omitted.) Id. "It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals,223 Conn. 198, 206, 658 A.2d 559 (1995).
The defendant acted pursuant to General Statutes § 8-6 (a) (3) and §§ 8.8.c and 8.8.1 of the zoning regulations of the Town of Woodbury in denying the plaintiff's request for a zoning variance. The plaintiff appeals on the ground that the defendant, in denying his application for a variance, acted arbitrarily, illegally, and unreasonably and that it abused its discretion. Specifically, the plaintiff argues that the denial of the variance results in a legally valid hardship to him and that the variance is consistent with the general purpose and intent: of the zoning ordinance, the neighborhood, and the comprehensive plan. the plaintiff further argues that his application for a variance of § 5.3.2.c, § 4.3.11, and § 2.2 was automatically approved pursuant to General Statutes § 8-7d because the defendant failed to act on it CT Page 2543 within sixty-five days of the close of the public hearing.
"Our law governing variances is well settled. Section 8-6 (a) (3) provides in relevant part that a zoning board of appeals may `determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship. . . .'" Reid v. Zoning Board of Appeals,235 Conn. 850, 856-57, 670 A.2d 1271 (1996), quoting General Statutes § 8.6 (a) (3). This section is interpreted as authorizing "a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to carrying out the general purpose of the zoning plan." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207.
Section 8.8.1 of the Woodbury Zoning Regulations provides that a variance shall be granted when:
 a. The lot is exceptionally irregular, narrow, steep, or contains other exceptional physical conditions which would result in exceptional difficulty or unusual hardship that would deprive the owner of reasonable use of the land or building involved.
 b. The exceptional circumstances or conditions applying to the land or building for which the variance is sought shall not apply generally to land or buildings in the neighborhood and shall not have resulted from any act subsequent to the adoption of these Regulations by the property owner or others and shall be fully described in the findings of the Board.
 c. The variance shall be necessary for reasonable use of the land or building and shall be the minimum variance that will accomplish the purpose.
 d. The variance will be in harmony with the purposes and intent of these Regulations and will not be injurious to the neighborhood or detrimental to the CT Page 2544 public welfare.
Local regulations relating to the granting of a variance limit a zoning board's authority under § 8-6 (a) (3). Stillman v. Zoning Board ofAppeals, 25 Conn. App. 631, 634-35, 596 A.2d 1 (1991).
In rejecting the plaintiff's application for a variance, the defendant stated the following reasons on the record: (1) Property does not meet minimum lot area requirements per Section 4 of the zoning regulations to qualify for granting a variance; (2) Other apartment alternatives are available within existing main dwelling; and (3) There was insufficient hardship evidence presented. (ROR, Exhibit C-2). As stated previously, "[w]here a zoning agency has [formally] stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the [board] was required to apply under the zoning regulations." RR Pool Patio, Inc. v. Zoning Board of Appeals, supra,257 Conn. 470. Furthermore, "[t]he decision must be sustained if even one of the stated reasons is sufficient to support it. . . ." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
The record reasonably supports the defendant's denial of the plaintiff's variance application on the ground that the plaintiff did not present sufficient hardship evidence.
The plaintiff's variance application stated that the nature of his hardship was that "[tlhe steepness of the lot did not permit the expansion of the house without substantial cutting of banks and filling. Pole barn already existed on the only other flat part of lot. Accessory apartment located in existing barn (accessory building) rather than adding onto house will result in much less environmental impact and site disturbance. Financial hardship requires owner to live in accessory apartment in barn while renting main house." (ROR, Exhibit A-1). The plaintiff argued that the topography of his lot, front and side yard setbacks, and the placement of his septic system and well prevent him from adding an accessory apartment on to the main house. (ROR, Exhibit B-5, p. 2). Furthermore, he argued that he cannot construct a second story addition to the garage connected to the main house because its foundations were not constructed to support such an addition and they would require substantial reinforcement. (ROR, Exibit B-5, p. 2)
"A hardship resulting from the peculiar topography or condition of the land . . . may well be a [legal] hardship. . . ." Fiorilla v. ZoningBoard of Appeals, 144 Conn. 275, 280, 129 A.2d 619 (1957). "Limitations imposed by the shape of the lot do not in themselves create a hardship, CT Page 2545 however. They must, in conjunction with the regulations, prevent the owner from doing something the owner otherwise has a right to do. An owner has a right to beneficially use [his] land, for example, but [he] does not have a right to undertake the most beneficial use of [his] land." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1995 Sup., pp. 36-37). Furthermore, "the hardship must differ from the conditions that generally affect property owners in the: same area, and it must arise from circumstances beyond the control of the property owner seeking the variance." Bloom v. Zoning Board of Appeals, supra, 233 Conn. 209.
Although the plaintiff sought a variance because of hardship due to topographic conditions, namely the steepness of the lot, he made no showing to the defendant zoning board of appeals that the topography on his land differed from conditions that generally affected other property owners in the same area. Furthermore, § 8.8.1 of the Woodbury Zoning Regulations limits the granting of a variance to cases where the lot "is exceptionally irregular, narrow, steep, or contains other exceptional physical conditions which would result in exceptional difficulty that would deprive the owner of reasonable use of the land or building involved." Photographs of the subject property submitted by the plaintiff to the defendant do not display any exceptional steepness or other physical conditions warranting the granting of a variance. (ROR, B-6). Thus, based upon the record evidence, it was reasonable for the defendant board to find that hardship due to topographic conditions could not provide the basis for the plaintiff's legal hardship.
The plaintiff cites Stillman v. Zoning Board of Appeals,25 Conn. App. 631, 596 A.2d 1 (1991), for the proposition that hardship arising from lot configurations, grades, and the location of existing improvements constitutes a legally valid hardship. In Stillman, the court held that the plaintiff, who requested a variance in order to build an addition, established hardship due to the configuration of the plaintiff's lot and the location of the well and septic system. Id., 636-37. Stillman, however, is distinguishable from this case because the location of the well and septic system in that case prevented the building of an addition anywhere but an area within that prohibited by a setback requirement. Id., 636. In addition, in Stillman there existed no local regulations limiting the board's power under § 8-6 (a) (3); id., 634-35; whereas, here, local regulations limit the granting of a variance to exceptional physical conditions on the property which do not apply to land generally in the surrounding neighborhood. Furthermore,Stillman has been called into question by the Supreme Court's decision inBloom v. Zoning Board of Appeals, supra, 233 Conn. 210-11 n. 13. TheBloom court stated that "the fact that an owner is prohibited from adding new structures to the property does not constitute a legally cognizable hardship. For, [ilf it is a hardship to not be able to use one's property CT Page 2546 as one wishes, then most setback variance applications would have to be granted. Although we distinguish Stillman from this case, we do not necessarily endorse its holding." Id.
The plaintiff also claims, as the basis of his hardship, that financial difficulties require him to live in the accessory apartment in the barn while renting out the main house. "Variances cannot be personal in nature, and may be based only upon property conditions." Reid v. ZoningBoard of Appeals, supra, 235 Conn. 857. "A mere economic hardship or a hardship that was self-created . . . is insufficient to justify a variance . . . and neither financial loss nor the potential for financial gain is the proper basis for granting a variance." (Citation omitted.)Bloom v. Zoning Board of Appeals, supra, 233 Conn. 208. "Financial considerations are relevant only if the application of the regulation or ordinance practically destroys the value of the property for any use to which it may be put and the regulation or ordinance as applied to the subject property bears little relationship to the purposes of the zoning plan." Id., 210.
The plaintiff's need to rent out the main house to pay his mortgage is personal and economic in nature and, therefore, cannot provide the basis for granting a variance.
The defendant board also found that other apartment alternatives were available within the existing main dwelling, makinq the granting of a variance unnecessary. This finding is relevant to the plaintiff's claim of hardship.
The plaintiff claimed at the hearing that "unusual physical conditions" on his property prevented him from adding an otherwise permitted accessory apartment. (ROR, Exhibit B-5, p. 3; Exhibit D-1, p. 4). The plaintiff, himself, however, pointed out that a second story addition over a garage attached to the main dwelling was possible. (ROR, Exhibit D, p. 4). Nevertheless, the plaintiff indicated that this was not a good option because of steepness behind the garage and the fact that its foundation would require substantial reinforcement. (ROR, Exhibit D, p. 4). The plaintiff further indicated that he did not want to invest in the work and money to add on over the garage when he already had an apartment above the pole barn. (ROR, Exhibit D, p. 7).
Hence, the record demonstrates that other apartment alternatives, consistent with local zoning regulations, were available to the plaintiff. Having found no topographic conditions on the plaintiff's lot prohibiting him from adding on to the main dwelling, the only consideration preventing the plaintiff from building an accessory apartment above his garage was the added work and expense. These reasons CT Page 2547 are economic and personal in nature and, therefore, cannot provide the basis for the granting of a variance. Accordingly, the defendant's finding that the plaintiff had other apartment alternatives available to him, making the granting of a variance unnecessary, was reasonable.
Because the record reveals no topographic conditions peculiar to the subject property, financial difficulties do not form the basis of a legal hardship, and other apartment alternatives were available to the plaintiff, the record reasonably supports the defendant's finding that the plaintiff presented insufficient hardship evidence to warrant the granting of a variance.
The defendant also found that the plaintiff's variance should be denied because the property does not meet minimum lot area requirements per § 4 of the zoning regulations to qualify granting a variance. The court finds that the record supports this ground, as well.
The plaintiff's property is located in district OS-80; (ROR, Exhibit C-2, p. 2); requiring a lot area of 80,000 square feet, (ROR, Exhibit F). The defendant determined that the plaintiff's lot was 60,000 square feet. (ROR, Exhibit D-1, p. 6). The record indicates that the defendant determined, in essence, that the plaintiff was really requesting to have two single family dwellings on the same property under § 5.3.2.b of the regulations rather than an accessory apartment pursuant to § 5.3.2.c. (ROR, Exhibit C-2, p. 2).
Accessory apartment is defined in § 5.2.2.c of the zoning regulations as "a separate, self-contained living unit within, and subordinate to, any existing single family residence. . . ." The apartment for which the plaintiff seeks to obtain a variance is not located within, and subordinate to, the main dwelling. It is located in the pole barn — a separate structure on the plaintiff's property. Hence, it was reasonable for the defendant board to find that the plaintiff's apartment was not an accessory apartment under § 5.3.2.c.
Section 5.3.2.b provides that "[t]wo single family residential dwelling units may be constructed per lot, provided the applicable minimum lot area requirements of Section 4.2 shall be doubled. Thus, in order to have two single family residential dwelling units on his property the plaintiff would need a lot 160,000 square feet in size since the minimum lot area requirement in his zone is 80,000 square feet. Because the plaintiff's apartment above the pole barn is served by its own driveway; (ROR, Exhibit B-2); and the plaintiff intends to live in it year round while renting out his main dwelling; (ROR, Exhibit B-5, p. 1); the defendant's treatment of it as a residential dwelling under § 5.3.2.b was not unreasonable. Furthermore, the plaintiff's property, at 60,000 CT Page 2548 square feet, does not meet the minimum lot requirements for two single family residential dwelling units.
General Statutes § 8-6 allows a zoning board of appeals to grant a variance when it is "shown not to affect substantially the comprehensive zoning plan. . . ." Bloom v. Zoning Board of Appeals, supra, 233 Conn. 207. In addition, § 8.8.1.d of the Woodbury Zoning Regulations requires that a "variance shall be in harmony with the purposes and intent of [the] Regulations and will not be injurious to the neighborhood or detrimental to the public welfare." Under both § 8.8.c and General Statutes § 8-6, in reviewing a variance application, a board is to consider the effect a variance will have on neighboring property values. Furthermore, under General Statutes § 8-6 and § 8.8.1.b of the Woodbury Zoning Regulations, an applicant must demonstrate that the conditions for which the variance is requested affect his parcel particularly and do not affect generally the district in which the parcel is situated.
Some of the plaintiff's neighbors expressed concern at the public hearing that surrounding property values would be negatively affected by allowing the plaintiff to have "nonconforming two residences" on 60,000 square feet of land. (ROR, Exhibit D, 1 p. 7). Neighbors were also concerned about increased noise and a decrease in privacy if the variance was granted. (ROR, Exhibit D-1, pp. 7-10). Given this testimony, the board reasonably could have found that granting the plaintiff's variance would affect substantially the comprehensive zoning plan and be injurious to the neighborhood.
In addition, the plaintiff has failed to present evidence showing that conditions especially affecting his property, and not surrounding properties, result in an exceptional hardship to him. As the defendant points out, from the assessors' map submitted by the plaintiff; (ROR, Exhibit B-3); "it is readily apparent that the lots of the vast majority of his neighbors do not contain the minimum 160,000 square feet required for their owners to construct a second dwelling unit on their property." (Defendant's Memorandum, p. 16.) Thus, the majority of the defendant's neighbors would be prevented by § 5.3.2.b from having two individual residences on their property. (ROR, Exhibit B-3). Accordingly, it was reasonable for the defendant board to deny the plaintiff's variance from § 5.3.2.b, as the conditions on the plaintiff's lot are not unique or particular to his property.
The plaintiff next argues that the Zoning Board of Appeals has failed to act on his application for variance of §§ 5.3.2.c, 4.3.11, and 2.2 within sixty-five days of the close of the public hearing and its failure to so act constitutes an automatic approval under General Statutes § CT Page 25498-7d.[1] (Plaintiff's Memorandum, p. 5.) The defendant board argues that the plaintiff's application sought a variance for a "certain use," namely, to use an accessory apartment in the second floor of a preexisting pole barn, not a variance of each of the above sections. The defendant contends that "[b]oards of appeal are necessarily entrusted with the function of deciding, within prescribed limits and consistent with the exercise of legal discretion, whether a regulation applies to a given situation, and the manner of its application." (Defendant's Memorandum, p. 24.) The defendant argues that it determined that only § 5.3.2.b of the regulations, dealing with two single-family residential dwelling units, applied to the plaintiff's variance application, and it acted on the application accordingly. The defendant also contends that, even if it failed to act on the plaintiff's application within sixty-five days, a zoning board of appeals is not subject to the "automatic approval" doctrine applicable to zoning commissions. (Defendant's Memorandum, pp. 25-26.)
"Generally it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." Sperov. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). The record evidence discloses that the defendant board determined that the pertinent regulation was § 5.3.2.b. The court finds that its action in doing so was not arbitrary, capricious, or an abuse of its discretion. Furthermore, the defendant's failure to render a decision on the other sections listed by the plaintiff did not constitute a failure to act. The defendant acted within sixty-five days by applying the only section of its regulations it considered relevant to the plaintiff's variance application.
Having found that the board acted on the plaintiff's application within sixty-five days, the court need not consider the defendant's second argument relating to automatic approval.
For the foregoing reasons, the plaintiff's appeal is dismissed.
____________________ THOMAS G. WEST, J.